Theodore WILEY, Jr., and Osborne
Booker Waters, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Jan. 12, 1977.

Certiorari Denied by Supreme Court
May 2, 1977.

William B. Bruce, Nashville, for Wiley.

Charles L. Hendrix, Jr., Nashville, for Waters.

R. A. Ashley, Jr., Atty. Gen., William B. Hubbard, Asst. Atty. Gen., Edward M. Yarbrough, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

RUSSELL, Judge.

Theodore Wiley, Jr. and Osborne Booker Waters were jointly charged with the commission of two separate armed robberies (of Raymond R. Oakley and Rex D. Kenyon) and, upon a joint trial, were both convicted in both cases. Wiley's sentence was fixed at ten years in each case while Waters' sentence was set at fifteen years in each case; and the trial judge, without setting out why, ordered the two sentences of each man to be served consecutively. Both have appealed and assigned numerous errors. For the reasons hereinafter set out, we overrule the assignments of error of both appellants and affirm the convictions.

The robbery victims, Oakley and Kenyon, operators of a semi-trailer truck, were victimized immediately after arriving in Nashville. Arriving at their truck docking area in the nighttime, they were shortly accosted by two robbers armed with pistols. Their personal valuables were taken, as was a tape player from their tractor. The robbers, both young black men, made violent threats with racist overtones to the victims. Finally, each victim was knocked in the head in an apparent effort to kill them. Both played dead and survived. Immediately after the robbers left the scene the victims drove to an area police station and reported the matter. Shortly thereafter an automobile registered to Wiley was involved in a chase with a police cruiser and was wrecked and abandoned by two black males. A search of the car revealed fruits of these robberies and a pistol identified as one of the weapons used. Subsequently victim Oakley was shown a group of five photographs by police officers, and picked Appellant Wiley's picture as being that of one of the robbers. The following day a group of six additional photographs was shown to Oakley, and this time he identified a picture of Waters as being that of the second robber. Victim Kenyon could not identify either robber because, in his words, his eyes were "glued on the gun" during the robberies.

The cases against Wiley and Waters had at one time been severed, and Waters had been separately tried, that proceeding resulting in a mistrial because of a hung jury. Apparently Wiley chose to testify upon that trial, and admitted that he (Wiley) was "up with" the robbery, and admitted that he took the tape player which he abandoned in his car upon running from the police. Wiley also gave a statement to the investigating officers, after full advice of his *Miranda* rights, and the statement fully inculpated him. Victim Oakley made a positive in-court identification of both of the accused.

Only Waters questions the legal sufficiency of the convicting evidence. The defendants offered no proof. Obviously, the assignment is without merit. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963).

Wiley assigns as error the fact that he was tried for "two separate and distinct offenses", and Waters claims error because his trial was consolidated with that of Wiley. The same evidence was germane to both offenses and to the prosecutions of both defendants. The confessions of Wiley

were carefully redacted to eliminate any reference to Waters. There was no abuse of the trial judge's discretion and no error. As to Wiley's argument that only one offense was committed in the simultaneous robbery of the two men, he faces the insurmountable obstacle of precedents explicitly holding to the contrary. *Wilkerson v. State,* 211 Tenn. 32, 362 S.W.2d 253 (1962); *Morgan v. State,* 220 Tenn. 247, 415 S.W.2d 879 (1967).

■ Both Wiley and Waters assign error upon the trial judge's ordering their respective two sentences to be served consecutively. Unquestionably he had the right and authority to do so. T.C.A. § 40–2711 explicitly so provides, and also provides that the trial judge's action in that respect shall be reviewable. Our Supreme Court, in the case of *Gray v. State of Tennessee,* 538 S.W.2d 391, filed at Jackson of June 1, 1976, for publication, laid down standards for the making of this judgment by the trial judge, and specifically directed that in all cases the record shall be made to reflect the reasons for the ruling. This record does not contain an expression by the trial judge of his reason or reasons, and under the authority of *Gray* we would usually be required to remand the case with instructions to the trial judge to include in the record those factors which he considered in ordering the sentences to be served consecutively. The obvious reason for this lack of compliance with the mandates of *Gray* is that this trial was held on November 18, 1975, more than six months before *Gray* was filed.

■ We hold that in this instance the reasons for the ruling are both obvious and sufficient, making a remand unnecessary. Where it appears that one is a dangerous offender the sentences may properly be made consecutive. Our Supreme Court, in *Gray,* said:

A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants

convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances, and not merely on the fact that two or more dangerous crimes were committed.

In the case at bar, it was totally unnecessary to the purposes of robbery for the helpless and unresisting victims to be hurt, and yet each was struck a vicious blow to the head. Oakley was pronounced dead by one of the robbers before a like blow was delivered in cold blood to Kenyon. It would be an exercise in exercising for us to remand this record to the trial judge for him to state reasons, since aggravating circumstances manifestly appear.

■ Wiley assigns as error the admission into evidence of his inculpatory statement, claiming that it was involuntarily given. This same contention was made upon the trial and a jury-out hearing was conducted by the trial judge. Wiley claimed that the statement was beaten from him. The interrogating officers denied the accusation. During the course of his cross-examination Wiley unequivocally admitted to perjury upon material matters, saying that he had lied during Waters' first trial when he (Wiley) then testified that he had committed the robbery. The trial judge found as a fact that the statement was not coerced. It is well settled that the finding by a trial judge that a confession was voluntarily made will not be overturned unless the defendant makes a showing that the evidence preponderates against such finding. *Wooten v. State,* 203 Tenn. 473, 314 S.W.2d 1 (1958). We affirm the judgment of the trial court and overrule the assignment of error.

Wiley's next assignment of error presents a difficult question for this Court, because the totality of the relevant factors do not appear. The assignment is that Wiley's

testimony upon Waters' previous trial should not have been introduced against Wiley upon this trial "since his Court appointed attorney was not present at that time".

■ It does appear that Wiley's attorney was not present when he testified upon the earlier trial. What does not appear is why he was not present, and what part (if any) he had in Wiley's voluntarily testifying. Apparently the trial judge did not explicitly advise Wiley of his Fifth Amendment rights not to testify. He (Wiley) was, of course, at that time a co-defendant, but his case had been severed. Probably Wiley's own lawyer had fully advised him that he did not have to testify. It would have been well for the trial judge to have made this fact to appear; or, if it were not a fact, to so advise Wiley himself of his Fifth Amendment rights. What the trial judge did do was to advise Wiley that he had the right to have his attorney present, and made sure on the record that Wiley understood that right and affirmatively waived it. We cannot assume that Wiley was not aware of his Fifth Amendment right not to testify, in the face of the circumstances strongly indicating that his testimony was given with the prior knowledge of his lawyer, and in the total absence of a contrary showing. It would have been a better practice for the trial judge, on the record at the first trial, to have made Wiley's knowledge and waiver explicit.

■ Argument upon this assignment is directed at the Sixth Amendment right to counsel. Wiley expressly waived his right to have his attorney present. We assume also, in the context of this case, that his attorney was well aware of this choosing to voluntarily testify and made the decision not to attend. We cannot hold this to have been ineffective representation without knowing the facts. The assignment is overruled.

■ Wiley's final assignment of error complains of the jury argument of the prosecuting attorney. This argument is not included in the Bill of Exceptions, so this Court has nothing to consider. The transcript, after page 189 and before page 203, contains a parenthetical note: "Pages 190–202: Argument by General Yarborough—Mr. Bruce objected to a portion of General Yarborough's argument to the jury and was one of the grounds listed in his motion for a new trial. The argument of General Yarborough (opening argument) is made an exhibit to Mr. Bruce's motion for a new trial". We find no such exhibit with the motion for a new trial, even if that were the proper way to present the record on appeal. Both the appellant and the State quote from the alleged argument in their briefs. The appellant makes no citation to the record as required by Rule 14(2); while the citation of the State is to pages 201 and 202, which in the record before us are merely covered by the above quoted note. It is a fundamental rule that we cannot pass upon matters not presented by the record before us. *Fonte v. State*, 213 Tenn. 204, 373 S.W.2d 445 (1963).

■ Waters assigns error upon the introduction into evidence of the six pictures from among which Waters' picture was picked by one of the victims. The thrust of the complaint is that the photo line-up was highly suggestive and violative of fundamental fairness. We have examined the photographs and carefully reviewed the relevant portions of the record. The assignment is without merit.

■ Waters filed a pro se motion to dismiss, which was concluded with the assertion that for him "the only fair trial is no trial at all". The trial judge dismissed the motion, and this is assigned as error; but the assignment is neither briefed nor argued. We overrule the assignment.

■ Waters' fourth assignment contends "that the Court erred by its failure to declare a mistrial as to him upon his motion after Officer Jack Rohtert mentioned his name while summarizing the codefendant's statement". What actually happened was that in answer to a direct question by counsel for Wiley the officer did say that "Osborne Moore" was the person who Wiley

had said was with him. While Waters had originally been indicted under his name with "Osborne Moore" listed as an alias, this had been stricken from the indictment and the jury had no way of knowing that it was Waters who was alluded to. We need not discuss this question further, other than to say that the State deliberately avoided any reference to the name of Wiley's cohort as told to the officers by Wiley, and this name was brought out purposefully by Wiley's attorney. Perhaps the State should have objected to the question, as should have counsel for Waters. The State must always guard against the injection of incompetent evidence by one co-defendant against another. However, no harm resulted in this case, and it could be argued that since the jury heard only a name that was not Waters' that he was helped rather than prejudiced. Even if this had been error, it would certainly have been harmless in the face of the overwhelming proof of guilt in this case. *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972).

Finally, Waters contends that the sentences set are excessive. They are within the range set by law. The assignment is without merit. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963).

Affirmed.

GALBREATH, and DAUGHTREY, JJ., concur.