**Edgar Virgil DUKES, III, and Ronald David Dukes, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Nov. 30, 1978.

Certiorari Denied by Supreme Court March 5, 1979.

Ray E. Cate and William A. Davidson, Knoxville, for appellants.

Brooks McLemore, Jr., Atty. Gen., Robert L. Tucker, Asst. Atty. Gen., Nashville, Al C. Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

O'BRIEN, Judge.

Defendants filed a joint appeal from their conviction for murder, armed robbery, kidnapping to commit robbery, and using a firearm in the commission of a felony. They were committed to serve life in the penitentiary for each of the first three offenses and for a period of five (5) years for the offense of using a firearm in the commission of a felony.

By their first assignment of error defendants contend that the murder indictment should have been dismissed in this case because the alleged offense occurred in a county other than the one in which they were indicted.

This case resulted from a robbery and kidnapping which transpired in Union County. According to the evidence it is probable that the homicide of the victim occurred in adjoining Knox County. Mr. Hollis Kitts operated Jim's Sport Shop in Union County. He was the victim of the various offenses with which defendants were charged. Sometime prior to 08:30 P.M. the store was robbed of several hundred dollars and a number of firearms. Mr. Kitts was abducted by the robbers. Two days later his wallet, and various of the items it contained, were found scattered along a roadside in Knox County. A day or two after that his body was discovered on a side road just inside the Knox County line. Investigation led to defendants. Ronald Dukes was arrested on December 27, 1976. He gave several statements, first denying any involvement in the crimes, and then, ultimately implicating himself. Edgar Dukes surrendered himself on January 1, 1977. Before he was formally arrested he gave a statement disclosing the location of one of the pistols taken in the robbery, and narrating his version of the robbery, kid-

napping, and homicide. Shortly after Edgar was placed in custody Ronald gave another statement substantially corroborating the one given by Edgar.

It is the contention of defendants that there was not any evidence to indicate where the victim was killed, other than where his body was found, therefor the State failed to prove that any act or criminal intent was initiated in Union County. Their written statements, introduced into evidence, generally reflect a plan to rob Jim's Sport Shop, and take Hollis Kitts as hostage. An accomplice, who was tried separately, shot and killed Mr. Kitts without their prior knowledge or consent after they had crossed the county line.

T.C.A. Sec. 40–105 provides:

"When an offense is committed partly in one (1) county and partly in another, or the acts or effects thereof constituting or requisite to the consummation of the offense, occur in two (2) or more counties, the jurisdiction is in either county."

██ Venue is a jurisdictional matter and not an element of the crime charged. It may be established by a preponderance of the evidence and it is not necessary that it be shown beyond a reasonable doubt. See *Stinson v. State*, 181 Tenn. 172, 180 S.W.2d 883 (1944). We have previously related some of the circumstances bearing on the issue. In addition there was evidence that the co-defendant, Robert Sands, had stated while on the way to the scene of the robbery that he might have to "waste" a certain person if he was at the store. Any material fact may be established by either direct or circumstantial evidence. The jury was warranted in deciding that the intention to kill Mr. Kitts had been formed in Union County or that the homicide actually occurred there prior to his transportation across the county line. This would lay jurisdiction for trial of the defendants in either county. T.C.A. Sec. 40–105, *Stinson v. State*, supra.

Defendants say it was error to deny a continuance in the case and cite various reasons through different assignments. They say the Union County Grand Jury originally returned an indictment against them on February 7, 1977 charging them with murder, kidnapping and armed robbery. Subsequently on March 17, 1977 the grand jury met and returned three separate indictments charging them with these offenses plus a charge of employing a firearm in the commission of a felony. The case being set for trial on March 31, 1977 defendants were not allowed the statutory time of fourteen (14) days, excluding Sundays, between indictment and trial in accordance with T.C.A. Sec. 40–2005.

██ We find defendant's argument to be without merit. On March 17, 1977, at the same term, the grand jury amended the previously returned indictments. The amended indictments did no more than charge the same offenses separately rather than as different counts in the same indictment and added the charges of common law murder and simple kidnapping. This accrued to defendants' benefit. We do not find any actual violation of T.C.A. Sec. 40–2005. Our courts have held that the legislature intended that the delay between indictment and trial to apply only where the indictment or presentment and arrest occurred substantially at the same time. See *Hood v. State*, 187 Tenn. 501, 216 S.W.2d 14. Where no prejudice has been shown by failure to comply with this section, a reversal is not warranted. See *Neal v. State*, 206 Tenn. 492, 334 S.W.2d 731.

Defendants submit that statements made by them were introduced into evidence erroneously because they were not properly advised of their constitutional rights and the statements were involuntarily given. They contend they were interrogated at length and coerced by a threat to turn them over to a crowd which had collected outside the jail. They also say they were under the influence of drugs at the time the statements were obtained.

██ After a thorough and comprehensive jury-out hearing the trial judge found that the witnesses made their statements voluntarily and knowledgeably of their own volition without any intimidation, coercion,

threats, promises, trickery or fraud. The court found that, based on their backgrounds, the defendants probably had been drug users but found no evidence the use of drugs had clouded or impeded their minds to the extent their statements were involuntary. There is adequate evidence in the record to show defendants were advised of their constitutional rights prior to making any statement. We concur in the findings of the trial judge. A confession is generally admissible even though made at a time the accused was suffering from, or under the influence of narcotic drugs, provided that at such time the accused is capable of making a narrative of past events or of stating his own participation in the crime. See *Williams v. State*, 491 S.W.2d 862 (Tenn.Cr.App.1972). The assignment is overruled.

■ Defendants say the trial court erred in delaying decisions on a motion to dismiss the indictment until the day of the trial. The contention is that the delay in the court's ruling prejudiced them by creating uncertainty in their minds and impairing their defense due to emotional instability. No evidence or authority was cited to sustain this contention. The motions to dismiss the indictments applied only to the charge of murder and a possible change of venue. We are satisfied the trial judge properly delayed his decision and defendants were not prejudiced in any manner by the delay. The motion for continuance on that basis was properly denied. The assignment is overruled.

Defendants also say they were prejudiced in denial of an application for continuance because they were denied the opportunity to develop newly discovered evidence and locate material witnesses.

■ Both defendants had admitted to their involvement in the offenses for which they were indicted. Two days before the trial date counsel moved for a continuance based on defendants' request to proceed on an alibi defense that would have placed them elsewhere than the situs of the offenses. The motion for continuance was overruled on the morning of trial. Defense counsel notified the court of this change in defendants' strategy and asked to be allowed to withdraw as counsel. The court was advised that the proposed alibi witnesses had been contacted and would not support the alibi defense. The trial judge agreed that counsel had acted diligently in investigating the new defense and declined the continuance. This was a matter which was discretionary with the trial judge and we find no abuse of his discretion. We overrule the assignment.

Defendants claim error because of denial of a motion made on the trial date for a further mental evaluation by a psychiatrist to determine their competency at the time of the commission of the crime.

■ A hearing was held on defendants' original motion for psychiatric evaluation and although the trial judge found no evidence to indicate they were not competent he ordered an evaluation because of the serious nature of the offenses with which they were charged. The evaluation was apparently made at a community mental health center as provided for in T.C.A. Sec. 33–708(a). The report of evaluation found the defendants competent to advise with counsel and to stand trial. The motion for further examination was for the purpose of determining their competency at the time the crime was committed. The trial judge commented that if there was any reason whatsoever to question the defendants' competence he would grant a continuance for further evaluation. In the absence of any proof of that nature he denied the continuance and put defendants to trial. Our review of this record confirms the decision of the trial judge. There is not a modicum of evidence to indicate that further evaluation at State expense, or otherwise, would have been of any benefit to these defendants. The trial judge found there was nothing in the evaluation report to indicate that further evaluation was needed. The decision in such matters is discretionary with the trial judge. *Mackey v. State*, 537 S.W.2d 704 (Tenn.Cr.App. 1975). There is no requirement in the statute that a mental evaluation be made, or, if

any examination is directed by a trial judge, that such examination be made by a psychiatrist. We overrule the assignment.

Defendants claim prejudice by denial of an application for change of venue.

T.C.A. Sec. 40–2201 provides:

"In all criminal prosecutions the venue may be changed, upon the application of a defendant, when it is made to appear satisfactorily to the court that, from undue excitement against the prisoner in the county where the offense was committed, or any other cause, a fair trial could probably not be had."

■■■ There was a motion filed and pre-trial proof heard in support of an application for change of venue. There was very little evidence offered beyond the affidavits of defendants and their testimony to the effect that they did not think they could get a fair trial in Union County. The court called a witness, a former sheriff in the county, who was of the opinion that defendants could get a fair trial in that county. Defendants called the incumbent sheriff who was of the opinion a fair trial could be had. After the evidence was offered the court reserved judgment until a voir dire of a tentative jury could be held. The trial judge suggested that if it appeared at that time a fair trial could not be had the motion for change of venue would be granted. On the morning of the trial one hundred sixty-three prospective jurors were present. Forty-seven jurors were excused. Twenty-six of those were excused because they had a fixed opinion about the guilt or innocence of defendants. The remainder were excused for other miscellaneous reasons. The twelve jurors finally selected stated they had no preconceived opinion about the guilt or innocence of the accused. There is no indication in the record that they were influenced in any manner by any of the factors raised in argument in defendants' brief. Even though a prospective juror has read or heard some publicity about a case, or heard some person mention it, that is not sufficient to disqualify him if he is otherwise qualified and if he states on oath, notwithstanding what he read or

heard, he believes he can give the defendants a fair and impartial trial on the law and the evidence. See *Dupes v. State*, 209 Tenn. 506, 354 S.W.2d 453. We overrule the assignment.

Defendants claim error on denial of a motion to challenge a juror for cause.

In the brief it is commented that defendants had exhausted all of their preemptory challenges and denial of the challenge of a juror for cause brought on a further denial of a fair and impartial trial.

■■■ Defendants gave no reason whatsoever to the trial judge to justify their motion to challenge for cause, nor have they attempted to justify the assignment by setting forth any grounds in this court. Under such circumstances we find the assignment to be without merit.

Defendants say it was error to deny a motion to excuse prospective jurors from the courtroom before proceeding with the voir dire examination.

■■■ Defendants' brief cites a number of different factors that might or could have affected the prospective jurors waiting to participate in the voir dire examination. However there is no evidence in this record that any of the factors enumerated influenced any of the jurors individually or the twelve individuals finally selected as a jury. Out of one hundred sixty-three prospective jurors there were fifty-one veniremen who had not been called by the time the jury had been selected. The entire process took approximately three hours. We do not find any abuse of the trial judge's discretion in overruling the motion to voir dire the prospective jurors individually. We overrule the assignment.

Defendants claim it was prejudicial error to deny a motion for mis-trial after some forty prospective jurors had stated they had formed an opinion of guilt.

■■■ This charge is not borne out by the record. We have already stated that twenty-six prospective jurors were dismissed because they said they had fixed opinions. The court did not allow one of these individ-

uals to state the basis for his opinion, that is, whether or not he believed that the defendants were guilty or innocent. Defendants do not cite a single incident to support the assignment. We have carefully read the voir dire examination, particularly that part conducted by the trial judge, and we do not agree that any criticism of the jurors on his part was prejudicial. The record indicates he expressed general disbelief that some prospective jurors would let "hearsay" prejudice them against the defendants prior to the time they had heard any of the evidence in the case. The trial judge was diligent in his efforts to provide a fair and impartial jury. Although it might have been better, if possible, to sequester the remaining prospective jurors, we do not find any evidence in this record of any prejudice against the defendants. We overrule the assignment.

 Defendants complain of comments by the State's attorney in closing argument. We have reviewed the cited example of improper argument and fail to see how defendants could have been unduly prejudiced by the remark. Objection was made, sustained, and the jury admonished that it was their responsibility to make the judgment in the case. We overrule the assignment.

It is claimed the court erred in denying defense counsel's motion to withdraw after defendants abandoned their preconceived defense and instructed counsel they wished to interpose a defense of alibi.

Defense counsel determined to their own satisfaction that the alibi defense was false and could not be sustained by supporting witnesses. On the morning of the trial the court was notified of this tactical move by defendants. A conference was held in chambers and the motion to withdraw was denied. At trial defendants testified in their own behalf that they were elsewhere at the time of the offenses.

 Obviously counsel did everything possible to prevent the defendants from jeopardizing their own defense. They took the only ethical stand which they could in informing the court of the circumstances. Although counsel now says they could not predict or plan a proper defense no evidence is offered to show how denial of the motion to allow them to withdraw prejudiced the defendants. If the defense was prejudiced in any manner by the conduct of defendants or their choice of defense, that was a matter of their own choosing about which they now have no right to complain.

Defendants claim error upon denial of a special request for instructions to the jury.

 Defendants submitted a special request which involved the venue on the murder charge and the duties of the jury in the event they found the homicide occurred outside of Union County. We have examined the instructions of the trial judge in reference to the venue of the case and find it to be a correct statement of the law. Having properly instructed the jury on the issue the trial judge was under no duty to grant appellants' special request. See *Freshwater v. State*, 2 Tenn.Cr.App. 314, 453 S.W.2d 446.

Defendants make several assignments in which they claim that the verdict of the jury was contrary to the law:

(a) The verdict finding them guilty of murder, kidnapping and armed robbery, and the use of a firearm while committing the offense of kidnapping was erroneous because the conviction of one offense was a bar to the conviction of any other offense since the same evidence was involved in each offense.

(b) They were convicted of kidnapping to commit robbery and the use of a firearm while committing kidnapping. The prescribed penalties for these offenses include enhanced punishment and therefore conviction of one is a bar to conviction for the other.

(c) The penalty invoked by the jury for the offense of using a firearm while committing kidnapping was life imprisonment. The maximum penalty

prescribed for the offense is five years in prison. Defendants say this was an expression of the prejudice and inflamed condition of the collective mind of the jury.

Defendants were convicted of armed robbery, kidnapping to commit robbery, use of a firearm while committing the offense of kidnapping, and murder in the first degree. The crimes of armed robbery, kidnapping with intent to commit robbery, and murder in the first degree are three separate and distinct offenses against the law. Although they occurred at substantially the same time, or in chronological sequence in the course of a single criminal episode, they are not identical offenses. Different evidence was required to prove each of the offenses. The statutory elements of the offenses are different and none of the three are included within the other. In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the United States Supreme Court stated the rule to be followed:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not . . . ."

In *State v. Hudson*, 562 S.W.2d 416 (Tenn.1978), the Tennessee Supreme Court stated the purpose of T.C.A. Sec. 39–4914 was to provide additional punishment for one who employs a firearm as a means of committing a felony and did not create a new offense. Rather, it amended by implication those felony statutes which do not otherwise provide an increase in punishment for use of a firearm in committing such felonies. The intent of the legislature was to provide for increased punishment in such cases because of the presence of aggravating circumstances.

We conclude that the separate conviction in this case for using a firearm in committing the kidnapping should be deleted. The judgment for *kidnapping* to commit robbery should be revised to specify the offense to be *kidnapping* to commit robbery by the use of a firearm, and by providing that the punishment for that offense consist of the two sentences fixed by the jury that is life in the penitentiary, plus five years, those two sentences to run consecutively.

This will also resolve the second complaint above in which defendants say their conviction for kidnapping to commit robbery and the use of a firearm while committing kidnapping cannot stand.

When the jury returned a verdict finding the defendants guilty of the offense of using a firearm while committing kidnapping the sentence originally fixed by them was life imprisonment. The trial judge directed the jury to resume their deliberations and return a correct sentence. This was done and a new sentence fixed at a term of five years. The theory propounded is that the verdict and sentence of the jury was preconceived prior to their deliberation and was contrary to the law. They say the harshness of the sentence indicated the jury was prejudiced against them. We disagree. All of the sentences meted out by the jury are within the range prescribed by law. In such a case the sentences cannot normally be considered excessive nor are they indicative of passion, or prejudice, or caprice on the part of the jury. *Wiley v. State*, 552 S.W.2d 410 (Tenn.Cr.App.1977); *Anglin v. State*, 553 S.W.2d 616 (Tenn.Cr. App.1977). The trial judge had the jury correct the erroneous sentence returned for the offense of using a firearm to commit kidnapping. This court has further revised the judgment to conform with the case law in this State. See *State v. Hudson*, supra. The judgment of the trial court in respect to kidnapping to commit robbery and using a firearm to commit kidnapping are vacated and revised to constitute the single offense of kidnapping to commit robbery by use of a firearm with the punishment fixed at life in the penitentiary for the offense of kidnapping plus five years as enhanced punishment for committing the offense of kidnapping by use of a firearm, with the sentences to be served consecutively.

The judgment of the trial court is in all else affirmed.

DAUGHTREY and BYERS, JJ., concur.