Keith Edward **SAEGER**, Appellant,

v.

**STATE of Tennessee**, Appellee.

Court of Criminal Appeals of Tennessee,
At Nashville.

Nov. 13, 1979.

Permission to Appeal Denied by Supreme
Court Jan. 21, 1980.

D. C. Daniel, Jr., Murfreesboro, for appellant.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Pat Apel, W. Edward Barnard, Asst. Dist. Attys. Gen., Nashville, for appellee.

OPINION

TATUM, Judge.

The defendant, Keith Edward Saeger, entered guilty pleas to three charges of armed robbery. The trial judge imposed consecutive sentences and denied suspension of execution of the sentences to enable the defendant to make application to the Governor for a pardon under T.C.A. § 40–3002.

■ The defendant was not entitled to relief under the provisions of T.C.A. § 40–3002. The statute provides for the suspension of execution of a sentence, in the discretion of the trial judge, when, in his opinion, one or more of the specifically listed circumstances exist. The statute provides a basis for a judicial recommendation of clemency. The trial judge obviously found that the defendant did not meet one or more of the requirements of the statute. We concur in that finding and overrule the assignment.

■ We now turn to the issue of whether the trial court erred in ordering the three sentences of ten years each to run consecutively. The first of these three armed robberies occurred shortly after midnight on the morning of January 31, 1978; the other two robberies occurred on the night of February 5, 1978. The defendant committed the first robbery with his father's shotgun, but after this initial robbery, he purchased a .357 magnum pistol, one of the most powerful and dangerous handguns in manufacture. On the afternoon of the February 5 robberies, the defendant practiced his marksmanship with the magnum, firing 80 rounds of ammunition. The two robberies of February 5 were accomplished with

the .357 magnum and the defendant still had the magnum and ammunition for it in his possession when he was arrested later that night.

The record further indicates that the defendant was a compulsive and practicing gambler. After becoming heavily indebted for his gambling losses, he resorted to a practice of writing fraudulent checks. While under pressure brought about by his check-writing activities, he prepared himself with a mask, firearms and ammunition as above outlined, and committed the armed robberies.

The trial judge, in ordering consecutive sentences, said:

"As to whether or not the sentences should run consecutively or concurrently—under Gray v. State, the fifth (5) factor, dangerous offender, 'If the crime for which he is convicted indicated he has little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high—', and of course, the Court goes on further and says that the object 'to use consecutive sentences where appropriate to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their antisocial life style.'

The Court feels that under all the circumstances in this case, gentlemen, that the sentences should and must run consecutively, and that is the order—judgment of this Court. . . ."

In Gray v. State, 538 S.W.2d 391, 393 (Tenn.1976), the Supreme Court classified the type of offenders for which consecutive sentencing should be reserved. One of the classifications is designated as a "dangerous offender," about which the court stated:

A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed. However, this does not preclude the trial court from imposing consecutive sentencing for the commission of dangerous offenses where no aggravating circumstances are present if evidence indicates that the defendant should be sentenced under one of the other classifications.

We think that the evidence supported the trial judge's finding aggravating circumstances within the meaning of the foregoing quotations from the Gray case. The victims of the three robberies were cooperative with the defendant, rendering it unnecessary for him to discharge the firearms to accomplish the robberies. Nevertheless, his elaborate preparation for the crimes, including his marksmanship practice with the powerful magnum pistol, constituted material evidence upon which the trial judge could and did rationally conclude that the defendant was ready, willing, and able to fire the pistol with accuracy if necessary to accomplish his grim purpose.

We also find material evidence to support the trial judge's findings that the defendant was unwilling to lead a productive life and resorted to criminal activity in furtherance of his anti-societal life style. In Gray v. State, supra, the Supreme Court, in discussing persistent offenders, professional criminals, and multiple offenders, said:

"The object is to use consecutive sentencing, where appropriate, to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their anti-societal life style."

The multiple offender is defined in Gray as "one whose record of criminal activity is extensive." There is material, substantial, and uncontradicted evidence that the de-

fendant, over an extended period of time, engaged in frequent gambling activities. This led him to resort to an extended practice of engaging in fraudulent check-writing activities; finally, he committed three armed robberies. It manifestly appears that the defendant was a "multiple offender," defined in the *Gray* case as "one whose record of criminal activity is extensive." If three armed robberies are insufficient to make one a multiple offender, there can be no doubt that these robberies, coupled with the illegal gambling activities and fraudulent check-writing activities, constitute extensive criminal activity within the meaning of the *Gray* case. This is what the trial judge referred to when he stated that consecutive sentencing was appropriate "to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their anti-societal life style." See *Wiley v. State*, 552 S.W.2d 410, 412 (Tenn.Cr.App.1977).

The question of concurrent and cumulative sentencing is discretionary with the trial judge under the express provisions of T.C.A. § 40–2711. We do not find that he abused his discretion; therefore, we are not authorized to reverse his judgment. *Wiley v. State, supra.*

The judgment of the trial court is affirmed.

SCOTT, J., concurs.

O'BRIEN, Judge, concurring in part dissenting in part.

I cannot agree with the majority opinion insofar as it affirms consecutive sentences for a total of thirty (30) years imprisonment in these cases.

The entire statement of the trial judge relative to consecutive sentencing is contained in the Bill of Exceptions as follows:

"As to whether or not the sentences should run consecutively or concurrently—under *Gray v. State*, under the fifth (5th) factor, dangerous offender, 'If the crime for which he is convicted indicated he has little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high—', and of course, the Court goes on further and says that the object 'to use consecutive sentences where appropriate to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their antisocial life style.'

The Court feels that under all the circumstances in this case, gentlemen, that the sentences should and must run consecutively, and that is the order—judgment of this Court. . . ."

While the order in the Technical Record fixing the sentences to run consecutively explicitly states the reason to be, "(*Gray v. State*, # 5)." The record does not in any fashion include those factors which the trial judge considered in ordering the sentences to be served consecutively. In the *Gray* case the Court specifically states:

"A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed. However, this does not preclude the trial court from imposing consecutive sentencing for the commission of dangerous offenses where no aggravating circumstances are present if evidence indicates that the defendant should be sentenced under one of the other classifications."

The language used by the Court in *Gray*, in reference to aggravating circumstances means those circumstances attendant on the particular crime for which defendant was convicted. This view is sustained by the

decision in *Wiley v. State*, 552 S.W.2d 410 (Tenn.Cr.App.1977), in which this Court found that although the record did not contain an expression by the trial judge of his reasons for ordering consecutive sentences the evidence supported the decision. In that case the victims were struck in the head and left for dead in an apparent effort to kill them in the course of an armed robbery. The same is true in *Jones v. State*, 553 S.W.2d 920 (Tenn.Cr.App.1977), in which the defendants were convicted of assault and battery, crime against nature, and abduction of a female with consecutive sentences ordered in each case. The abuse of a sixteen-year-old female in the course of consummating the various offenses was held to be sufficient reason to classify them as dangerous offenders.

In this case there were no aggravating circumstances beyond the fact that three armed robberies were committed. The circumstances of their commission were admitted by the defendant and not contradicted in any fashion. The Director of Psychotherapy and Mental Hygiene at the Veteran's Administration Hospital in Murfreesboro, and a respected and eminent psychiatrist testified in behalf of defendant. Their testimony was generally favorable. The first, noting that defendant was participating in psycho-therapy, recommended continued psycho-therapy and very strict conditions of probation in the event of defendant's release. The other, though dwelling in a somewhat esoteric fashion on the probability and possibilities of defendant's rehabilitation based on his examinations of defendant, stated that he had the potential after a reasonable period of incarceration to avoid further difficulties with the law under the proper parole supervision. The State offered nothing particularly derogatory of the defendant. There is no indication that the evidence presented to the Court placed him in the category of dangerous offender in any of the several hearings on the matter in the trial court. The Court relied solely upon the dangerous offender classification as did the trial judge in *Peabody v. State*, 556 S.W.2d 547 (Tenn.Cr.App. 1977). This did not comply with the criteria in *Gray*. I would modify the judgment and fix the sentences to be served concurrently. In all else I concur with the majority.