**Robert Lee JOHNSON, Melvin Lee Taylor, Louis Douglas Johnson, and Eddie Lee Pallor, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 6, 1979.

Permission to Appeal Denied by Supreme Court March 10, 1980.

Stanley Fink, Memphis, for appellants Robert Lee Johnson and Louis Douglas Johnson.

Tim J. Thompson, Memphis, for appellant Melvin Lee Taylor.

Charles E. Baucum, Charles Wright, Memphis, for appellant Eddie Lee Pallor.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Dan L. Newsom, P. Ray Baker, Asst. Dist. Attys. Gen., Memphis, for appellee.

DAUGHTREY, Judge.

## OPINION

Three of the defendants, Eddie Lee Pallor, Robert Lee Johnson, and Louis Douglas Johnson, were convicted of raping a young Memphis prostitute and received thirty year sentences; the fourth, Melvin Lee Taylor, was convicted as an aider and abettor and was sentenced to ten years imprisonment. At trial the thrust of their defense was consent, or alternatively that "even though technically a prostitute can be raped, . . . the act of the rape itself was of no trauma whatever to this type of an unchaste woman." The jury rejected the defense of consent, as well as the defendants' damaged-goods theory, and after a review of the record, we find no reversible error which would require us to set aside the jury's verdict.

The evidence shows that the victim was assaulted on the street at approximately 2:00 A.M. one night as she walked from a local restaurant to her boyfriend's home nearby. She was grabbed from behind by two men, beaten, and forced into a brown automobile, where she was placed on the back floorboard. She resisted, grabbing the "gentiles" of one of her assailants, but her efforts were unsuccessful. She was driven to a location she was later able to identify by having counted the number of turns the car made. There, dragged from the car, she managed to break loose and run screaming a short distance before again being captured, knocked down and ultimately forced inside the house. While held in the house, she was raped by both occupants of the car, later identified as Eddie Lee Pallor and Robert Lee Johnson. As the second rape was being committed, a group of four or five more men entered the room. Two

of them, later identified as Louis Douglas Johnson and Melvin Taylor, taped her eyes with pieces of wide, gray electrical tape.

The victim was then driven to a second location, taken from the car, and physically forced through an open window into a room where she was raped again. The defendant Taylor eventually removed the tape from her eyes and also drove the victim to her boyfriend's house, dropping off the defendant Louis Douglas Johnson on the way. The victim immediately told her boyfriend what had occurred, and the two of them then followed Taylor's brown Oldsmobile, taking down the license number to give police.

After the police were called, the victim took officers to both locations where the rapes had occurred, giving them a detailed description of the inside of the room at the first house, which she had observed before her face was taped. At the second house, officers found pieces of gray electrical tape in a trash can; the tape had strands of hair sticking to it which, when later microscopically compared, were found to match the victim's hair. A roll of tape found in Taylor's Oldsmobile was likewise found to match the tape taken from the trash can at the second location.

The victim's physical condition on the night of these multiple rapes was described by several witnesses at trial. She had scratches and claw marks on her throat, shoulder and chest, bruises on her face and neck and on her left arm and leg, and swollen areas around her face. A pelvic examination at a local clinic revealed a bruise of the cervix and the presence of sperm.

Police arrested all four suspects on the day of the offense, and each of them made oral statements to arresting officers. Pallor and Robert Lee Johnson denied any involvement in the matter. Louis Douglas Johnson made a statement indicating that they had taken the victim to Pallor's house even though she appeared to be "mad" about it; he admitted "having sex" with the victim, but in a later statement insisted that "she give it to me." Taylor's state-ment was a general one, setting out the chronology of the group's movements on the night of the offense; he denied raping the victim, which she corroborated in her trial testimony.

■ Later the same morning all four defendants were placed in lineups and were identified by the victim. She also identified them individually in court. Contrary to the assignments raised on appeal, there is no indication of any error in the identification testimony. Despite the taping of her eyes, the victim had ample opportunity to observe the defendants over a period of some two hours and under various circumstances, many of them fully conducive to accurate identification. See generally *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1967). We see no basis to disturb the trial judge's decision to admit the victim's in-court identification of the defendants and the testimony of various witnesses regarding the pretrial lineup.

■ Nor was there any error in the admission of the defendants' oral statements to arresting officers. References to anyone other than the confessing defendant were carefully omitted, and thus there was no violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Moreover, we know of no legal basis for excluding such statements merely because they are "self-serving."

■ The defendants insist that the trial judge erred in refusing to allow proof of the victim's prior misdemeanor convictions for prostitution. His ruling under *State v. Morgan*, 541 S.W.2d 385 (Tenn.1976) was correct. Furthermore, the jury was fully aware that the victim was a professional prostitute and that she had prior convictions for attempted forgery and burglary. They chose to accredit her testimony anyway, as was their prerogative. Additional evidence regarding the victim's convictions for assignation could not have affected the outcome of the trial. Tennessee Rules of Appellate Procedure, Rule 36(a).

Nor were these convictions admissible to show consent. T.C.A. § 40-2445. Furthermore, there is no merit to the defendants' argument that the trial court erred in refusing to instruct the jury that "[a harlot] is more likely than [a chaste woman] to voluntarily have yielded." The trial judge gave full and correct instructions on the law of rape and the defense of consent, and thus there was no error in his refusal to give an additional, and in this case inaccurate, instruction. *Edwards v. State*, 540 S.W.2d 641 (Tenn.1976). If the antedeluvian approach embodied in the requested charge ever was the law in Tennessee,* it clearly has been superceded by § 40-2445.

We find no error in the admission of photographs showing the nature and extent of the victim's injuries, taken on the day of the offense. They are plainly not inflammatory, and they are highly relevant, in view of the defendants' claim of consent.

We hold that the evidence in the record is fully sufficient to support the jury's verdict of guilty. The defendants did not take the stand or present any evidence in their own behalf, except the Johnsons' grandmother, who testified that she saw a young woman generally meeting the victim's description at her house on the night of the offense. She said that the woman was with Melvin Taylor and that she made no outcry nor did she appear to have been physically harmed in any way. When we measure this evidence against the proof of guilt adduced by the State, we have no difficulty in concluding that the jury's verdict must be upheld under Rule 13(e), Tennessee Rules of Appellate Procedure.

Finally, we find no merit to the defendants' attack on the sentences assessed by the jury. The punishment in each instance is fully supported by the evidence and falls with the range authorized by statute, and therefore cannot be considered "excessive." *Wiley v. State*, 552 S.W.2d 410 (Tenn.Crim.App.1977).

* The defendants cite *Titus v. State*, 66 Tenn. 132, 133–34 (1874), in which a "common prostitute" is compared to "a virgin of uncontaminated

The judgment of the trial court is affirmed.

WALKER, P. J., and TATUM, J., concur.

purity . . . who would prefer death to pollution," and *Benestine v. State*, 70 Tenn. 169 (1879).