IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 14, 2018

## STATE OF TENNESSEE v. YASIN SOLOMON HAWKINS

**Appeal from the Criminal Court for Davidson County**
**No. 2015-C-2127    Mark J. Fishburn, Judge**

_____

**No. M2017-02439-CCA-R3-CD**

_____

A Davidson County grand jury indicted the Defendant, Yasin Solomon Hawkins, for aggravated robbery and aggravated assault. The Defendant filed a motion to suppress his statement to the police, which the trial court denied. The Defendant asserts that he was intoxicated when he made the statement to the police, and was thus unable to knowingly and voluntarily waive his Fifth Amendment rights. Following a bench trial, the Defendant was convicted of aggravated robbery and sentenced as a career offender to thirty years in the Department of Correction. The Defendant's sole issue on appeal is whether the trial court erred in denying his motion to suppress. We conclude that the trial court properly denied the motion to suppress and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

Nick McGregor, Nashville, Tennessee, for the appellant, Yasin Solomon Hawkins.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Jan Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from a robbery of a Nashville hotel located on Old Hickory Boulevard. The Defendant used a gun to demand money from the hotel employees and threatened harm if they did not give him "all of the money." After receiving the cash, the Defendant fled the building and drove away in a car. The robbery was captured on the

hotel's surveillance system. A Davidson County grand jury indicted the Defendant for the aggravated robbery of Rita Patel and the aggravated assault of Atul Kumar.

## A. Motion to Suppress

The Defendant filed a motion to suppress his statement made to the police. He asserted that, due to his intoxication, he was unable to make a knowing and voluntary waiver of his rights. At the hearing on the motion, the parties presented the following evidence: Sam Tetterton, a Metropolitan Nashville Police Department ("MNPD") officer, testified that he interviewed the Defendant on July 17, 2016. The Defendant had been involved in a single vehicle crash. Police officers at the scene of the crash notified robbery detectives about "an alert" associated with the Defendant, indicating that he should be interviewed about the hotel robbery. Detective Brian Stanley and Detective Tetterton conducted the video-recorded interview of the Defendant.

Detective Tetterton testified that there were a series of hotel robberies under investigation and authorities had been looking for a silver Dodge Challenger involved in those robberies. At the time of the crash, the Defendant had several outstanding warrants for his arrest and was driving the vehicle associated with the recent hotel robberies. Detective Tetterton responded to the crash site and spoke with the Defendant. According to Detective Tetterton, the Defendant did not exhibit any signs of intoxication.

The Defendant was transported to the police station for an interview related to the hotel robberies. Detective Tetterton described the Defendant as "very coherent." He stated that, during his interaction with the Defendant, both at the crash site and during the interview, he did not detect any odor associated with alcohol or drugs. He said that the interview occurred at 3:30 a.m. He recalled that the Defendant appeared "worn out and ready to go," but he did not notice any behavior or speech that called into question the Defendant's coherence. Detective Tetterton identified the rights waiver form executed at the beginning of the interview with the Defendant. On the form, the detectives indicated that the Defendant did not "appear intoxicated or [appear to] have [a]ny medical impairment that would render [h]im or her incompetent to fully understand the rights above and make a knowing, intelligent, and voluntary waiver[.]"

On cross-examination, Detective Tetterton testified that the Defendant mentioned that he was intoxicated "some time" during the interview. When asked why he did not inquire further about the Defendant's impairment, the detective responded, "I didn't ask further because he did not appear to be intoxicated." Defense counsel read the Defendant's statement to the police about his impairment, "As you can see, I'm high right now." Detective Tetterton reiterated, "He didn't appear to be high."

The State presented the video-recording of the interview. On the recording, Detective Tetterton introduced himself and stated that he would review the Defendant's rights with him. The Defendant interrupted, saying that the *Miranda* rights had already been reviewed with him. Detective Tetterton said that he was required to review the rights with him again, and the Defendant argued that he was ready to speak with detectives and was already aware of his rights. Nonetheless, Detective Tetterton proceeded with a review of the Defendant's rights. The Defendant confirmed that he understood his rights and that he wanted to waive his rights and speak with the detectives. Detective Tetterton read the entire form to the Defendant, and the Defendant signed and initialed the waiver.

During the interview, the Defendant explained that he came into debt ($1800 due to drugs) to someone, later identified as a drug dealer. The drug dealer, "Town," gave him the silver Dodge Challenger and made him commit robberies to repay the debt. The Defendant explained to the officers how he crashed the vehicle. He said that the drug dealer chased him down in a white Honda. The Defendant said that he did not wear a mask during the robbery and stated that he was on the surveillance video footage. He confirmed that he had robbed a hotel in La Vergne, a hotel on Bell Road, and one in Murfreesboro.

The Defendant said that he did not hurt anyone during the robberies and that he returned the pistol used during the robberies to the drug dealer. He provided the detectives with some information about the drug dealer. The Defendant was responsive to the detectives' questions. He told the detectives about his prior eighteen-year sentence and his drug addiction. While Detective Tetterton explained to the Defendant the process that the Dodge Challenger would undergo, Detective Stanley left the room. The Defendant stated that he was high, and Detective Tetterton asked if he was high when he conducted the robberies. The Defendant sorted through items in his wallet searching for a phone number. He asked if he would be able to place a phone call, and Detective Tetterton confirmed that he would be allowed to make a phone call. The Defendant told Detective Tetterton that he had been sleeping in the Dodge Challenger because he was homeless due to his drug addiction. He told Detective Tetterton that he was tired.

The trial court later issued a written order denying the Defendant's motion to suppress. In its order, the trial court made the following findings:

> In this case the Defendant states at one point in the interview that he is high. However, considering this statement, the totality of the circumstances does not support the conclusion that drugs had impeded the Defendant's mind "to the extent that his statements were involuntary." The Defendant started the interview stating his intention to answer questions.

He stated that he had been read his *Miranda* rights. He stated that he understood each right he was waiving, even repeating what was read to him. He held his head in his hands and appeared stressed and tired, but the entire interview was coherent.

Detective Tetterton signed the waiver as well, stating that the Defendant did not appear intoxicated or impaired such that he could not make a knowing, intelligent, and voluntary waiver. Detective Tetterton also testified at the hearing that he saw no evidence suggesting that the Defendant was unable to understand the consequences of his waiver. Based on years of experience with countless people under the influence of narcotics, Detective Tetterton concluded that the Defendant was not impaired. Even if the Defendant was high at the time he signed the waiver, there is no evidence suggesting that he was so impaired as to not fully understand the consequences of his decision.

## B. Bench Trial

On July 9, 2015, Radhika Patel was working as an assistant manager at a hotel located on Old Hickory Boulevard in Davidson County, Tennessee. She saw the Defendant walking around the hotel and assumed he was a guest of the hotel. The Defendant came into the lobby area, and she offered him assistance, which he declined. The Defendant lingered in the area for approximately fifteen minutes looking at "fliers." The hotel manager, Atul Kumar, also offered the Defendant assistance and, again, the Defendant declined. A guest came in regarding a question about his reservation and, after the guest left, the Defendant raised a gun and demanded the money in the hotel's cash drawer. Ms. Patel opened the drawer and gave him all of the cash inside. While pointing the gun at the manager, the Defendant ran out the door with the cash and got into a Dodge Challenger and drove away.

On the morning of July 9, 2015, Officer Brian Murphy, an MNPD officer, responded to a call about a suspicious person at an apartment complex. Officer Murphy found the Defendant asleep in a breezeway of a building and woke the Defendant. The Defendant was distinctly dressed in a "very noticeable Hawaiian shirt" and had "very identifiable tattoos." The Defendant provided his name and said that he was waiting for the pool to open. He admitted that he was not a resident of the apartment complex but stated that he lived in a townhome nearby. The Defendant was cooperative and when the apartment complex elected not to prosecute for trespass, the Defendant left.

Toward the end of his shift, Officer Murphy heard a dispatch that released a suspect description related to a hotel robbery. The suspect description included clothing

that matched what the Defendant had been wearing that morning at the apartment complex. Officer Murphy responded to the hotel, watched surveillance footage, and confirmed that, based upon his earlier interaction with the Defendant, the robber in the surveillance footage was the Defendant.

Detective Tetterton testified consistently with his testimony at the suppression hearing. He identified the video recording of his interview with the Defendant, and the trial court admitted the video recording into evidence.

After hearing this evidence, the trial court found the Defendant guilty beyond a reasonable doubt of aggravated robbery and acquitted the Defendant of the aggravated assault charge. At a subsequent sentencing hearing, the trial court imposed a sentence of thirty years in the Tennessee Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

The Defendant argues that the trial court erred when it denied his motion to suppress his statement to police. He asserts that his waiver of his *Miranda* rights was not voluntary due to his intoxication and, therefore, the trial court should have suppressed his statements to the police. The State responds that the trial court properly found that the Defendant knowingly and voluntarily waived his *Miranda* rights. We agree with the State.

Our standard of review for a trial court's findings of fact and conclusions of law on a motion to suppress evidence is set forth in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). Under this standard, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id*. at 23. As is customary, "the prevailing party in the trial court is afforded the 'strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence.'" *State v. Carter*, 16 S.W.3d 762, 765 (Tenn. 2000) (quoting *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998)). Nevertheless, this Court reviews *de novo* the trial court's application of the law to the facts, without according any presumption of correctness to those conclusions. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn. 1999). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. *Odom*, 928 S.W.2d at 23. In reviewing a trial court's ruling on a motion to suppress, an appellate court may consider the evidence presented both at the suppression hearing and at the subsequent trial. *State v. Henning*, 975 S.W.2d 290, 299 (Tenn. 1998).

A waiver of constitutional rights must be made "voluntarily, knowingly, and intelligently" to be valid. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). The State has the burden of showing voluntariness by a preponderance of the evidence. *State v. Kelly*, 603 S.W.2d 726, 728 (Tenn. 1980). The totality of the circumstances surrounding the interrogation must reveal both an uncoerced choice and the required level of comprehension. *State v. Stephenson*, 878 S.W.2d 530. 544-545 (Tenn.1994).

In this case, the evidence contained in the record does not preponderate against the trial court's findings of fact. Furthermore, before an accused is entitled to have his statement suppressed because he was under the influence of alcohol and/or narcotic drugs, it must be established that the accused's faculties were so impaired that the statement could not be considered the product of a "free mind and rational intellect." *State v. Robinson*, 622 S.W.2d 62, 67 (Tenn. Crim. App. 1980). *See Bram v. United States*, 168 U.S. 532 (1897). The test to be applied in these cases is whether, at the time of the statement, the accused was capable of making a narrative of past events or of stating his own participation in the crime. If, as here, it is established that the accused was capable of giving a narrative of past events and/or relating his role in the commission of the offense, the statement is generally admissible notwithstanding the fact that the accused was under the influence of alcohol and/or narcotics when he made the statement. *State v. Green*, 613 S.W.2d 229, 232-33 (Tenn. Crim. App. 1980); *Dukes v. State*, 578 S.W.2d 659, 663 (Tenn. Crim. App. 1978); *Williams v. State*, 491 S.W.2d 862, 866 (Tenn. Crim. App. 1972).

In our view, the recording of the interview reflects that the Defendant was coherent and responsive during the interview and that the Defendant was capable of creating a logical narrative of past events. The Defendant stated he understood his *Miranda* rights and, in fact, argued that Detective Tetterton did not need to review the rights with him again. The interrogation was not lengthy, and nothing indicates that the police deprived the Defendant of food, sleep, or medical attention. The police did not coerce or threaten him. Under the totality of the circumstances, we cannot conclude that the trial court erred in denying the Defendant's motion to suppress. The Defendant is not entitled to relief.

### III. Conclusion

Based upon the foregoing, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

- 6 -