John L. Fonte

*v.*

State of Tennessee.

373 S.W.2d 445

(*Jackson,* April Term, 1963.)

Opinion filed December 5, 1963.

DAVID E. CAYWOOD, Memphis, of counsel, BURCH, PORTER & JOHNSON, Memphis, for plaintiff in error.

GEORGE F. MCCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, for the State.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The defendant was indicted and convicted for violation of the first Section of the Tennessee Vagrancy Act, sec. 39-4701, T.C.A., which provides that:

"It shall be a misdemeanor for any person having no apparent means of subsistence to neglect to apply himself to some honest calling; * * *."

He was sentenced to ninety (90) days in the Shelby County Penal Farm, and from this conviction and sentence, he has seasonably appealed in error to this Court.

At the trial, two witnesses appeared for the State. Captain Rainey of the Memphis Police Department testified that he first saw the defendant on the morning of the 4th or 5th of March, 1962, at a restaurant in Shelby County. While drinking coffee, he noticed the defendant counting money "that seemed to be all rumpled up" and he overheard the defendant tell a waitress that he had a thousand dollars in one stack. When the defendant started to leave, he was met by another man and the two drove off in an automobile that had been parked outside. Captain Rainey jotted down the car's license number and later relayed this information to the Memphis Vice Squad. Lieutenant Wallace of the Memphis Vice Squad was the only other witness at the trial. He testified that

as a result of the information supplied by Captain Rainey an investigation was undertaken. It was determined that the car observed by Rainey belonged to the defendant. On the night of the 13th of March, 1962, Lieutenant Wallace and another officer observed the defendant's car in the parking area of the Turf Club, a gambling establishment in Tipton County. On March 18th a search warrant was issued for the defendant's person and his room at a Memphis motel in Shelby County. The warrant was directed at "gambling paraphernalia" thought to be in the defendant's possession. When the officers went to his room they found the following articles: a green apron, which the defendant identified as one he wore in his employment at the Turf Club; three pay envelopes issued the defendant from the State Line Gambling Casino in Mississippi; two letters, both of which talked about gambling; and an address book that contained the names of several well known gamblers in the area.

The defendant at that time told the officers that he had come to Memphis about three years previously. He said that during this time he had worked at the State Line Gambling Casino and at the Turf Club. He further told the officers that he had been a professional gambler all of his life and that he had never done anything else. Lieutenant Wallace testified that in checking with the F.B.I. and at a local credit bureau, he had been unable to establish that the defendant had ever pursued honest employment since his arrival in Memphis. At the time of his arrest, the defendant had $771.00 in his possession. The defendant did not testify or otherwise put on any proof on his behalf.

The defendant assigns nine errors as grounds for reversal. In assignments (1) and (2) he contends that

there is no evidence to support the jury's verdict and that the evidence preponderates against his guilt and in favor of his innocence. For the most part, these two assignments are grounded on the fact that the defendant had $771.00 in his possession at the time of his arrest. Counsel for the defendant earnestly and ably argues that the possession of this substantial sum of money shows that the defendant had "apparent means of subsistence" so as to bar a conviction for vagrancy under the statute. He further argues that the source of this money is immaterial. In support of this contention, he cites the Canadian case of *Rex v. Sheehan,* 14 B.C., 13 (1908), where the court in a vagrancy prosecution, held that possession of $27.50 showed that the defendant had means of support.

This point appears to be one of first impression in this State. In looking to the law of other American jurisdictions we find that most courts hold that "apparent means of subsistence", or other wording of like meaning, is not necessarily shown by the mere possession of money. *People v. Cramer,* 139 Misc. 545, 247 N.Y.S. 821 (1930) ; *Branch v. State,* 73 Tex.Cr.R. 471, 165 S.W. 605 (1914) ; *Gentry v. Town of Booneville,* 199 Miss. 1, 24 So.2d 88 (1945) ; 55 Am. Jur. Vagrancy, sec. 3 and sec. 10; 91 C.J.S. Vagrancy sec 2c.

In the case of *People v. Cramer,* supra, the two defendants had $800.00 between them at the time of their arrest. The statute in that case made a lack of "visible means of support" one of the elements of the statutory crime of vagrancy. While the court reversed the conviction on another ground, a concurring opinion had the following to say about this statutory phrase:

"The mere possession of money, or even an entire lack of it, should not be regarded as proof positive either of 'visible means of support' or the lack of such means within the meaning of this statute. \* \* \* Of course, the 'means' must be legitimate and sufficient, the result of industry and honest effort and toil, or otherwise lawfully acquired. They are the 'means' which honest men usually possess and employ, and not those of tricksters, fakirs, thieves, and other violators of our laws."

The Cramer case and the proposition contained therein are cited with approval in the subsequent New York cases of *People v. Erickson,* 171 Misc. 937, 13 N.Y.S.2d 997 (1939); and *People v. Banwer,* Mag.Ct., 22 N.Y.S.2d 556 (1940). As these cases all point out, the means of support, mentioned in the statute, refer to honest means. If a person is accused of vagrancy, he cannot evade the charge by merely showing that he is in possession of a certain sum of money. The money must come from a legitimate source. 91 C.J.S. Vagrancy sec. 2b.

In the instant case, the defendant is an admitted professional gambler. He told the officers at the time of his arrest that he had never pursued any other employment. It goes without saying that gambling is not an "honest calling". We think that the evidence clearly shows that the defendant had no "apparent" means of subsistence from a legitimate source and that he was not pursuing an "honest calling". The only fair inference from the record is that the defendant's money was secured from gambling, either through his employment at the Turf Club or as a result of independent gambling. As far as this statute is concerned, the $771.00 found in his possession is tainted by its source.

■ The interpretation that we have placed on the phrase, "apparent means of subsistence", is in accordance with what we deem to be the purpose behind this statutory enactment, i. e., the prevention of crime. The word, "vagrancy", carries with it a connotation of idleness, and, at common law, one of the aims of the crime of vagrancy was to force the idle to work. 91 C.J.S. Vagrancy sec. 1, ("Vagrancy, at common law, consists in going about from place to place by a person without visible means of support, who is idle, and who, although able to work for his or her maintenance, refuses to do so, but lives without labor or on the charity of others."). However, this no longer appears to be the purpose behind this crime as codified; today, the Acts are directed almost exclusively at the prevention of crime—"to prevent crimes which may likely flow from a vagrant's mode of life." 91 C.J.S. Vagrancy sec. 1. When this purpose is attached to the statute, it is clear that the mere possession of money is an insufficient defense to a prosecution for statutory vagrancy.

Since we feel that the evidence sustains the defendant's conviction and in all other particulars, the interpretation of "an apparent means of subsistence" adopted by this Court, compels us to overrule the defendant's first and second assignments of error.

■ By his third assignment of error, the defendant contends that the indictment should have been quashed because it did not contain a continuando. Black's Law Dictionary defines a continuando as, "A form of allegation in which the * * * criminal offense * * * is charged to have been committed on a specified day and to have 'continued' to the present time, or is averred to have been committed at divers days and times within a given

period or on a specified day and on divers other days and times between that day and another.''

Here the indictment charged the defendant with violating the statute ''On the ——— day of March, A.D. 1962, before the finding of this indictment, * * *'' While the crime of vagrancy as defined by our statute is a continuing offense (*Armstead v. State,* 11 Okl.Crim. 649, 150 P. 511 [1915]) and has ''no application to single instances of conduct, which, if habitual, would amount to vagrancy''. (14 A.L.R. 1482, 1484), we do not think that it is absolutely necessary that a vagrancy indictment contain a continuando in express terms. The day of this indictment was obviously left out in order to charge the defendant with vagrancy for the whole month. This is permissible under sec. 40-1808, T.C.A. See *State v. Cornellison,* 166 Tenn. 106, 59 S.W.2d 514 (1933). The third assignment is overruled.

■■ By his fifth, sixth and seventh assignments of error, the defendant submits that the trial judge erred in refusing certain special requests. These grounds are also set out in the motion for a new trial; but they do not appear in the bill of exceptions and under our holding in *Koehn v. Hooper,* 193 Tenn. 417, 246 S.W.2d 68 (1951), this Court cannot consider them. While the charge in this case may be meager, we think that it is good as far as it goes and in the absence of special requests, a meager charge does not constitute reversible error. *McClard v. Reid,* 190 Tenn. 337, 229 S.W.2d 505 (1950), and cases cited therein. These assignments are without merit and for the reasons stated are overruled.

■ In the fourth assignment, the defendant contends that the trial court was in error in charging that:

"If the defendant had applied himself to some honest calling, the burden is on the defendant to produce evidence to that effect."

It should be noted that during the course of his charge, the trial judge told the jury that it was "incumbent upon the State, before you can convict the defendant, to establish to your satisfaction, beyond a reasonable doubt, that the crime charged in the indictment has been committed; * * *" We do not think that the charge complained of was erroneous in view of the court's later charge.

The uniqueness of a vagrancy case and the burdens which each party has in such a case was fully treated in the case of *Hutchins v. State,* 172 Tenn. 108, 110 S.W.2d 319 (1937). There the defendant challenged the sufficiency of the evidence on the ground that it was negative only. The only witnesses in that case were four police officers who testified for the State. There, as here, no evidence was introduced on behalf of the defendant. The four officers testified that they had known the defendant for some years and to their knowledge, he had never pursued an honest calling. They testified further that they had seen him hanging around the headquarters of a well known bootlegger. On cross-examination, they admitted they did not know whether the defendant had a bank account or independent means or a source of income and conceded that he might engage in trading unknown to them. In rejecting the defendant's contention, the Court pointed out that the statute referred to "apparent" means of subsistence and stated that this part of the State's case was made out by the testimony of the officers who had been observing the defendant for some time. This Court indicated that the burden rested on

the defendant once the State has made out its *prima facie* case by showing that the defendant had no apparent means of subsistence and was not known to pursue an honest calling; "if he had means of subsistence from sources not 'apparent,' or if he did apply himself to some honest calling of such a kind and under such circumstances as not to be apparent, then he knew it and knew of witnesses by whom he could prove it. These were matters peculiarly within his knowledge and power to bring forward and establish. He not only did not testify in his own behalf, a right which he had by law and which afforded no presumption against his innocence, but he also refrained from producing proof by others, which was available to him, if in fact he had 'means of subsistence,' or had applied 'himself to some honest calling.' "

The Court went on to note that:

"Certainly, when on a trial for violation of the statute which in terms makes appearances the test, the State has made out its case when these apearances of guilty violation are proven. Under such a statute it is peculiarly the obligation of the defendant to adduce evidence, if any is available to him, showing that what is 'apparent,' is apparent only."

■ In view of the nature of the crime, the State has made out a *prima facie* case once it has shown that a defendant had no "apparent" means of subsistence and that the defendant is not known to have pursued an honest calling. The testimony which can rebut these two elements is peculiarly in the possession of the defendant and it is up to him to produce it. The fourth assignment is overruled.

■■ In his eighth and ninth assignments, the defendant argues that although he was indicted for vagrancy, he was actually tried and convicted for gambling; and that the sentence of ninety days in the penal farm is excessive. As we said earlier, the evidence produced by the State clearly showed that the defendant was vagrant under our interpretation of the statute. In making out its case, the State put on evidence of the defendant's gambling activities to show that the defendant had no honest calling or other legitimate means of subsistence. Such evidence was clearly relevant to the issues before the court. We cannot say that the jury convicted the defendant of gambling when the evidence clearly showed that he was guilty of the offense charged in the indictment and the jury so found. Neither can we say that the ninety day penal farm sentence indicates a conviction for gambling or that such a sentence is excessive under the circumstances. Under the statute, sec. 39-4702, T.C.A., the defendant could have been sentenced to imprisonment up to twelve months. We find no abuse of discretion in the sentence of ninety days. The eighth and ninth assignments are therefore overruled.

Despite a most forceful presentation by counsel for defendant, both in his brief and oral argument, we can find no error in this case and as a result the judgment of the trial court must be affirmed.