Lolis Alexander BUCKINGHAM,
Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 25, 1976.

Certiorari Denied by Supreme Court
Aug. 16, 1976.

Andrew C. Rambo and Charles W. Kurtz, Shelbyville, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Fayetteville, Rondal T. Wilson, Asst. Dist. Atty. Gen., Shelbyville, for defendant-in-error.

OPINION

DUNCAN, Judge.

The defendant, Lolis Alexander Buckingham, was convicted in the Bedford County Circuit Court of murder in the second degree and received a penitentiary sentence of 99 years.

In this appeal, the defendant makes eight assignments of error, the first of which challenges the legal sufficiency of the convicting evidence. In particular, the defendant maintains that the only evidence of his guilt was his extra-judicial confession which he alleges was uncorroborated.

The evidence showed that between 8:30 p. m. and 8:45 p. m., on November 16, 1974, the deceased, Raymond Sudberry, was shot and killed by one of two black males who were attempting to rob him. Sudberry was a repairman for the Sanders Amusement Company, and on this occasion he had gone to the Red Baron Club in Shelbyville to repair a coin machine. The deceased was accompanied by his wife and two of their children; his brother-in-law, Carey Smotherman, and the latter's wife and child. The deceased and Smotherman entered the club, leaving the other family members in the car which was parked in the parking lot. A few minutes later, Sudberry and Smotherman returned to the car, at which time the attempted robbery and shooting occurred.

On December 3, 1974, the defendant was arrested and gave the officers a written confession. We do not think it necessary to set out the defendant's confession in full, but we call attention to the fact that, among other things, the defendant admitted that he and another individual, Billy Ray, were attempting to rob Sudberry at the Red Baron Club; that a scuffle ensued, and when Sudberry's elbow struck the defendant, a gun being held by the defendant "went off"; that Sudberry fell "to the ground against his car"; and that whoever was with Sudberry "picked him up and put him in the car."

Contrary to the defendant's insistence, his confession was corroborated in numerous respects by the testimony of the wit-

nesses for the State. To illustrate, we note that the State's witnesses, particularly the deceased's family members who were on the scene, confirmed that Sudberry was shot and killed at the time and place, and under the same circumstances as was related by the defendant in his confession.

In the defendant's confession, he referred to the fact that his accomplice had informed him of the likelihood that Sudberry would be getting some money from the machines in the Red Baron Club. Sudberry's connection with these machines was established by independent proof. Also, the proof showed that Sudberry's parked vehicle had the name of his employer, Sanders Amusement Company, written on it. Such independent evidence was corroborative of the defendant's statement about his knowledge of Sudberry's mission in the club.

The defendant further stated in his confession that Sudberry was in the club 3 or 4 minutes. This statement regarding the time sequence was corroborated by the State's witnesses. The defendant also stated, "Whoever was with Sudsberry (sic), picked him up, and put him in the car." The State's witnesses also corroborated this statement by testifying that after the deceased was shot, Smotherman picked him up and put him in the car.

■ The fact that none of the eyewitnesses could identify the defendant is inconsequential. When the corpus delicti is proven by independent evidence, a free and voluntary confession will sustain a conviction. *Taylor v. State*, 479 S.W.2d 659, 661–62 (Tenn.Cr.App.1972); *Franklin v. State*, 513 S.W.2d 146 (Tenn.Cr.App.1974).

In *Taylor v. State*, supra, the Court said: "The corpus delicti cannot be established by a confession alone. It can be when taken in connection with other evidence, direct or circumstantial, corroborating the confession. If from all the evidence the corpus delicti and the guilt of the defendant is proved beyond a reasonable doubt it is the duty of the jury to convict. *Ashby v. State*, 124 Tenn. 684, 139 S.W. 872 (1911). If our cases that refer to *Ashby v. State* are consulted, it will be

seen that they are dealing with the amount of corroboration necessary to make out the corpus delicti. They do not say that the defendant must be connected to the crime by evidence outside of the confession.

"The courts are said to be agreed that evidence in corroboration of a confession need not connect the defendant with the crime charged and that such connection can be shown by his confession without corroboration on that point. A confession may sustain a conviction where there is other evidence sufficient to show the commission of the crime by someone. 30 Am.Jur.2d, Evidence, Sec. 1137."

■ The defendant's confession is well corroborated by independent proof, and from all of the proof in the case, we are entirely satisfied that the defendant's guilt beyond a reasonable doubt is shown. The defendant has not carried his burden to show that the evidence preponderates against the verdict of the jury and in favor of his innocence. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173 (1963). The assignment on the evidence is overruled.

In regard to the defendant's second assignment of error, we find that the trial court did not err in admitting into evidence the defendant's confession.

The trial judge held a hearing out of the presence of the jury, at which hearing the State's proof showed that the defendant was arrested in Nashville, Tennessee. He was advised of his constitutional rights, and after making some incriminating statements, he told the officers that he did not wish to give a further statement until he talked to a lawyer. At this time the officers ceased further questioning of the defendant. While the defendant was being transported back to Bedford County, he asked the officers about the different degrees of murder and the applicable punishments for those degrees. Before answering the defendant's inquiry, one of the officers re-advised him of his rights, and then the defendant stated his willingness to give a further statement. He proceeded to give a

full oral statement to the officers, and after they reached the jail, the defendant's statement was reduced to writing and signed by him.

The defendant testified that he was advised of his rights and admitted that he understood them. He testified that no physical force was used against him. He admitted that after he had first said he did not want to make a statement until he talked to a lawyer, he inquired of the officers about the various degrees of murder. In his testimony, he insisted that the officers promised him that his charge would be lowered if he gave a statement.

█ The fact that a defendant, after full *Miranda* warnings, declines to make a statement does not automatically render inadmissible any subsequent statement made by him. One refusal to make a statement, when that refusal is fully honored, does not taint the substance of the entire subsequent procedures 'under the circumstances here. *Sullins v. State*, 1 Tenn.Cr.App. 630, 645, 448 S.W.2d 96, 103 (1969).

In the *Sullins* case, the Court said:

"The defendant must have understood his rights because he invoked them earlier himself. We cannot hold that an accused has no right subsequently to change his mind and waive rights, formerly invoked, particularly where he initiates the later interrogation by expressing a desire to give a statement."

█ The fact that the grand jury indicted the defendant for second degree murder rather than first degree murder is no evidence that he had been promised leniency, as he insists. It was the sole prerogative of the grand jury as to what charge would be alleged against the defendant in the indictment, and there is no proof that anyone interfered with the grand jurors in the performance of their duties.

█ After considering all of the facts and circumstances surrounding the taking of the defendant's confession, and determining the credibility of the witnesses, the trial judge found that the defendant's statement was freely and voluntarily given

and that it was taken in compliance with the *Miranda* admonitions. The trial judge discounted the defendant's insistence that he had been promised leniency. In our opinion, it was the trial judge's duty to resolve these factual issues. We do not think that the evidence preponderates against his findings and rulings, and thus we are bound by them. *White v. State*, 497 S.W.2d 751 (Tenn.Cr.App.1973). The assignment is overruled.

In his third assignment of error, the defendant argues that the petit jury was not selected, drawn, or summoned in accordance with the law. Specifically, he contends that the names in the jury box were not representative of the community at large because of a failure to include sufficient women. He also argues that there was no compliance with the mandates of T.C.A. §§ 22–228 and 22–235, and further maintains that the fact the jury box is kept secret is unconstitutional.

At a pre-trial hearing on the jury question, the Jury Commissioner, Bud Shapard, testified regarding the method of jury selection in Bedford County, stating that the names were taken from voter registration rolls, the telephone directory, the city directory, and other sources from which the names of reliable citizens might be found. He stated that these names were selected without regard to race, color, creed, sex, or age. At the hearing it was shown that after the decision in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the trial judge ordered the jury commission to add the names of additional women to the jury box.

█ The proof in this record shows that the composition of the venire was fairly drawn. There is no showing that any woman—or other group of citizens—were systematically excluded from the jury. The hearing revealed that of 35 prospective jurors on the jury panel scheduled to hear the defendant's case, at least 15 were women. Moreover, 5 of the 12 jurors who sat on the defendant's trial jury were women.

█ T.C.A. § 22–228 provides the method for selection of the names for the jury list,

and for the placement of these names in the jury box. It further provides for the security of the jury box, and also mandates that the jury book is to be kept "secret."

The defendant complains of these provisions that place a mantle of "secrecy" over the jury book and box, contending that they violate his constitutional rights. He argues that his counsel is thus prohibited from investigating the contents of the box. We do not see that these provisions are violative of any "jury" or "counsel rights" of an accused.

T.C.A. § 22–235 gives the trial judge supervisory and investigatory powers over the jury box and list. Any accused would have the right, upon proper motion, to have the court inquire into any suspected irregularities. Actually, this is exactly what occurred in the present case. On motion of the defendant, the court held a hearing and satisfied itself that the jury commission was acting properly in the methods they were using in the selection of jurors. The defendant's counsel had the right to present any witnesses or other evidence that he desired in order to support his position. Thus, the defendant's constitutional rights were protected. We find nothing unconstitutional about these jury selection statutes, and we further find that there was no violation of these statutes in the present case.

We overrule this assignment attacking the selection and composition of the defendant's petit jury.

■ In his fourth assignment of error, the defendant argues that it was error for the court to allow testimony regarding his escape from custody. Evidence was introduced to show that while awaiting trial on the present charge, the defendant escaped from the Bedford County Jail and was later apprehended in Nashville. Such evidence was admissible. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958); *Chapple v. State*, 528 S.W.2d 62 (Tenn.Cr.App.1975); *Mitchell v. State*, 3 Tenn.Cr.App. 153, 161, 458 S.W.2d 630, 633 (1970); *Craig v. State*, 2 Tenn.Cr.App. 510, 455 S.W.2d 190 (1970).

In discussing this issue in *Mitchell v. State*, supra, the Court, quoting from 22A C.J.S. Criminal Law § 631, said:

"As tending to show guilt, consciousness of guilt, or knowledge, evidence is generally relevant which shows that after accused was taken in custody he escaped, attempted to escape, or prepared to escape."

We find no merit to the complaint made and the assignment is overruled.

■ In his fifth assignment of error, the defendant complains of the District Attorney General's argument, insisting that the court erred in allowing the Attorney General to argue the effects upon a sentence of the parole, good behavior, and honor grade statutes.

Included in the argument of counsel for the State, we find several references about the effect that these statutes would have upon any sentence that might be meted out to the defendant by the jury. Also, we note that the court instructed the jury on the parole, good behavior, and honor grade statutes (T.C.A. §§ 40–3612, 40–3613, 41–332, 41–334), such instructions being mandated by the provisions of T.C.A. § 40–2707. While the defendant did not object to the court's charge, he did object and has assigned error on the State's argument concerning the effect of these statutes.

In *Farris, et al. v. State*, 535 S.W.2d 608 (Tenn.1976), the Supreme Court held unconstitutional that portion of T.C.A. § 40–2707 which mandates a charge on the parole, good behavior, and honor grade statutes. (See also *Farris* petition to rehear opinion, released March 30, 1976).

Since this case was tried before the decision in *Farris*, the trial court was merely following the law that was in effect at that time in charging on these statutes. Likewise, as of that time, the Attorney General had a right to argue the effect of these statutes upon a sentence.

Notwithstanding, since *Farris* holds that it is error for the court to charge on these statutes, it necessarily follows then that any argument to the jury on the effect of

these statutes upon a defendant's sentence would be error.

In *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622 (1957) and *Smith v. State*, 527 S.W.2d 737 (Tenn.1975), which were pre-*Farris* decisions, our Supreme Court held that any reference to parole possibilities during argument was improper. In the *Farris* opinion, the *Graham* case is quoted with approval; however, we see a distinction between the *Graham* and *Smith* cases and the present case. The *Graham* and *Smith* cases were tried before the last paragraph of T.C.A. § 40–2707, which requires the trial judge to charge the jury with the provisions of the Code dealing with parole and honor time, became effective. The present case was tried during the time that the mandates of that last paragraph were effective.

In our opinion, some of the language contained in the Supreme Court's opinion on the *Farris* petition to rehear is more applicable to the present case. In that opinion, our Supreme Court said:

"In order to clarify further our holding in this case we point out that the fact that a trial judge, prior to the release of our opinion, may have charged the jury on parole considerations does not necessarily mean that the error is reversible or that we will follow the *Farris* procedure."

Further, the Supreme Court in their opinion on the *Farris* petition to rehear approved the principle that such cases should be governed by their own facts; that is, "[E]very tub must stand on its own bottom." The Court quoted with approval from *Rogers v. State*, 196 Tenn. 263, 267, 265 S.W.2d 559, 561 (1954), as follows:

"But former decisions cannot be considered as a criterion or authority for thus mitigating a sentence fixed by the jury and trial court in a given case. Every case must be governed by its own facts, and a decision made according to the demands of law."

While the Supreme Court in *Farris* was charting an alternative course to be followed when these statutes were incorrectly charged, still the same principles would be applicable in dealing with the Attorney General's erroneous argument on the effect of these statutes.

 In the present case, the jury set the defendant's punishment at a 99 year penitentiary sentence for a cold-blooded murder committed by him during an attempted armed robbery. In our view, the argument of the Attorney General did not bring about the punishment set. It was the facts and circumstances in the case that dictated the sentence set by the jury. The defendant's guilt is overwhelming and we hold the error in the Attorney General's argument to be harmless. T.C.A. § 27–117.

In his sixth assignment of error, the defendant contends that the jury's verdict was motivated by passion, prejudice, and caprice, and that the sentence imposed was without the statutory limits of the punishment for murder in the second degree.

 T.C.A. § 39–2408 provides that the punishment for murder in the second degree shall be imprisonment "in the penitentiary for life or for a period of not less than ten (10) years." Since the defendant's sentence of 99 years is a "period of not less than ten (10) years," it is within the limits provided by the statute. Thus, it cannot be said that for this reason the jury verdict indicated passion, prejudice, or caprice. *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963).

Under his seventh assignment of error, the defendant argues that it was error for the court to appoint the mother of one of the jurors as a jury officer.

 From the record, it appears that a few minutes after the questioned jury officer was sworn, her relationship to one of the jurors was brought to the attention of the trial judge. She was immediately replaced by another officer. The defendant interposed no objection, and thus is now in no position to make a legitimate complaint. *Ezell v. State*, 220 Tenn. 11, 413 S.W.2d 678 (1967). Moreover, there is nothing in this record to show that the questioned jury officer improperly influenced the jury in any manner. The error, if any, is harmless.

T.C.A. § 27–117. This assignment is overruled.

 In his eighth and final assignment of error, the defendant maintains that the court should have declared a mistrial for the stated reason that the deceased's widow made some "emotional out-burst" during the trial. We find nothing in the Bill of Exceptions pertaining to this allegation, and thus we have nothing before us to consider. This assignment is overruled. *Fonte v. State*, 213 Tenn. 204, 373 S.W.2d 445 (1963); *Schoonover v. State*, 1 Tenn.Cr. App. 617, 448 S.W.2d 90 (1969).

We find no reversible errors in this record. The defendant's assignments of error are overruled and we affirm the judgment of the trial court.

GALBREATH, J., and SAM L. LEWIS, Special Judge, concur.