IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 12, 2000 Session

## STATE OF TENNESSEE  v. MICHAEL G. UPSHAW

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-03610     James C. Beasley, Jr., Judge**

---

**No. W1999-00777-CCA-R3-CD - Filed January 11, 2001**

---

The defendant, Michael G. Upshaw, was indicted and convicted of second degree murder. The trial court imposed a Range I sentence of 24 years in the Department of Correction.  In this appeal of right, the defendant has preserved for our review the following issues: (1) whether the trial court erred by denying defendant's motion to suppress a statement made in police custody; (2) whether the trial court erred by allowing certain photographs of the victim to be entered into evidence; (3) whether the trial court erred by finding the evidence sufficient to support a conviction of murder in the second degree; (4) whether the trial court erred by refusing to charge the jury on the lesser included offenses such as voluntary manslaughter or criminally negligent homicide; and (5) whether the trial court properly weighed the appropriate mitigating and enhancing factors during sentencing. We find no error and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court. THOMAS T. WOODALL, J., filed a concurring opinion in which DAVID G. HAYES, J., joined.

William D. Massey and Lorna S. McClusky, Memphis, Tennessee, for the appellant, Michael G. Upshaw.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; Karen Cook and James Turner, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

On November 3, 1997, at around 4:00 p.m., the victim, Sammy Douglas Thomasson, and a friend, Carmen Corum, drove to the intersection of Percy and Delta Streets in Memphis to purchase $10 worth of crack cocaine.  The two had been using illegal drugs together for some five months and routinely visited  that area of Memphis to make their purchases. At about 8:00 p.m. on the date of

the offense, the victim and Ms. Corum had used all of their supply of crack cocaine and went "riding around" in their Hyundai Excel, waiting to pick up Ms. Corum's paycheck so they could buy more drugs. They returned to the Percy/Delta area, but were unable to find any of their usual suppliers. As they were about to drive away, several men in a four-door gray car flagged them down and asked if they "wanted anything." Ms. Corum testified that when the victim answered "no," the men blocked their path so they could not drive away. A man, whom Ms. Corum described as wearing a red and white jacket, stepped out of the gray car from the backseat and ordered her and the victim to get out of the car. Ms. Corum testified that the victim put the car in reverse and that when the assailant raised a gun, she ducked inside the car and heard a gunshot. A bullet struck the victim in the head. The car, which continued to move backwards, ran over a ditch and stopped in a neighboring yard.

Mario Merritt, a witness for the state, testified that at approximately 8:00 p.m. on the night in question, he was driving through the Percy/Delta area, accompanied by the defendant and two other individuals. He acknowledged that they were in the area to sell drugs and that they flagged down the victim and Ms. Corum to see if they were interested in buying. In his statement to police, Merritt admitted that he blocked the victim's car with his own and then noticed the defendant step out the backseat. Merritt recalled that the defendant was armed with a pistol which he carried in the front of his pants. Merritt also stated that he then saw the defendant walk to the driver's side of the victim's car and shoot the victim in the head. Merritt acknowledged that, afterward, he and another of his companions hid the murder weapon and, three weeks later, buried it.

Officer Paul Bishop testified that he was riding a trolley on the night of November 3rd when he received a call that a shooting had occurred. While it only took about a minute for him to reach the Percy/Delta area, by the time he arrived, the entire vicinity was deserted. Officer Bishop recalled that he found a red Hyundai backed into a ditch and, on closer examination, saw the victim slumped into the passenger's seat. There was a bullet hole in his left temple. When the officer examined the interior of the car, he found a purse belonging to Ms. Corum on the floorboard. Officer Bishop found no weapons inside the vehicle.

Officer Dwight Woods was present when the defendant made a statement to the police. He testified that the defendant received Miranda warnings and signed a waiver of those rights. In his statement to the police, the defendant confessed that he shot the victim once with a .38 caliber pistol. The defendant claimed that he had fired his weapon because Merritt told him that the victim "ran off" with some money and because he believed the victim was going to shoot first. He contended that when he approached the victim's car, he became "paranoid" because the victim "drew for somethin[g]."

I

Initially, the defendant claims that his statement to the police was neither voluntarily nor understandingly made due to his illiteracy and the "extreme stressors" he endured while in custody. We disagree.

-2-

At the hearing on the motion to suppress, Lieutenant Douglas M. Swauncy of the Memphis Police Department testified that he assisted Sergeant D.E. Woods in the January 24, 1998, interrogation of the defendant. Lt. Swauncy recalled that the defendant was informed of his Miranda rights before any questions were submitted. He testified that the defendant read aloud from the Miranda form and initialed each right. He stated that the defendant acknowledged that he understood his rights, expressed a desire to make a statement, and never asked for an attorney. Lt. Swauncy maintained that he neither threatened the defendant nor promised anything in exchange for his statement. On cross-examination, Lt. Swauncy testified that the entire interrogation lasted approximately two-and-one-half hours, that there were two to three water breaks in that time, that both he and Sergeant Woods were out of uniform, and that neither was carrying a gun. He acknowledged that the defendant at one point during the interrogation indicated that he was tired and sleepy.

Lieutenant Sammie Howell Ballard testified that he assisted Lt. Swauncy and Sgt. Woods by reading aloud the defendant's statement, including his Miranda rights. Lt. Ballard stated that when a suspect is brought into custody who is unable to read or cannot read very well, the policy is for two officers to take the statement and a third officer to read the statement back to the suspect before asking for a signature. Lt. Ballard stated that he read the confession aloud and that he witnessed the defendant sign the document.

The defendant, who testified at the suppression hearing, claimed that he asked Lt. Swauncy for a lawyer several times, but was told he could not use the telephone. He contended that he was not advised of his rights, that he did not know what he was signing or initialing, and that he was nervous throughout the ordeal. On cross-examination, the defendant admitted he could read "a little" and was able to graduate from high school, obtain a driver's license, and find employment at the Memphis airport. While he claimed that at one point the police threatened to "hide" him away from his family and friends, he conceded that he was never threatened.

The trial court ruled that there was no violation of the defendant's rights during the taking of his statement. While acknowledging that the defendant may not have been able to read or write very well, the trial judge determined that he could comprehend the nature of his Miranda rights. Further, he found no evidence that the defendant was intimidated, threatened, or coerced.

It is the duty of the trial judge to determine the voluntariness and the admissibility of a defendant's pretrial statement. State v. Pursley, 550 S.W.2d 949, 952 (Tenn. 1977). The trial court's determination that a confession was given knowingly and voluntarily is binding on the appellate courts unless the evidence preponderates otherwise. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Questions about witness credibility and "resolution of conflicts in the evidence are matters entrusted to the trial judge." Id. Testimony presented at trial may be considered by an appellate court in deciding the propriety of the trial court's ruling on a motion to suppress. State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998). If the "greater weight" of the evidence supports the court's ruling, it will be upheld. Id. Yet, this court must conduct a de novo review of the trial court's

application of law to fact.  State v. Bridges, 963 S.W.2d 487 (Tenn. 1997); State v. Yeargan, 958 S.W.2d 626 (Tenn. 1997).

In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court ruled that before a custodial interrogation, police officers must advise defendants of the right to remain silent and the right to counsel.  If these warnings are not given, any statement elicited from a defendant is not admissible in trial.  Stansbury v. California, 511 U.S. 318, 322 (1994).  A defendant's rights to counsel and against self-incrimination may be waived as long as the waiver is made "voluntarily, knowingly, and intelligently."  Miranda, 384 U.S. at 479; State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992).  In order for an accused to effect a waiver, he must be adequately appraised of his right to remain silent and the consequence of deciding to abandon it.  State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994).  In determining whether a confession was voluntary and knowing, the totality of the circumstances must be examined.  State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997).

First, the evidence here does not preponderate against the trial court's determination that the defendant's waiver was voluntary.  Lt. Swauncy testified that the defendant was informed of his Miranda rights before any questions were submitted.  The officer confirmed that the defendant, who claimed he was illiterate, read aloud the rights form to the officers and then initialed the document.  Similarly, Lt. Ballard testified that he read the defendant the entire statement, including his Miranda rights.  The trial court resolved the credibility issue against the defendant.  The record supports that.  Moreover, illiteracy or difficulties in comprehension and understanding would not, in and of themselves, render the defendant's statement involuntary.  See State v. Perry, 13 S.W.3d 724, 738 (Tenn. Crim. App.), perm. to appeal denied, (Tenn.1999) (citing State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App.1985)); State v. Greer, 749 S.W.2d 484, 485 (Tenn. Crim. App. 1988); State v. Kelley, 683 S.W.2d 1, 6 (Tenn. Crim. App. 1984).  The trial judge, who heard all of the testimony, ruled that the defendant understood his Miranda rights.  The greater weight of the evidence supports the trial court's conclusion  that the defendant's waiver was knowing and voluntary.

Second, the record does not support the defendant's claim that he was signing a document relating innocent facts and not a confession.  The record establishes that officers read the statement to the defendant.  Afterward, the defendant signed the document.  When questioned by the trial judge, the defendant acknowledged that an officer read aloud each line of the statement before he agreed to sign his name to the document.  In our view, the evidence does not preponderate against the trial court's ruling.  See Odom, 928 S.W.2d at 23.

Third, the record does not support the defendant's claim that his confession was involuntary because of the "extreme stressors" that he faced while in custody.  The defendant claimed that he had been kept overnight in a holding cell with no place to sit down, that he was given no food, and that he  was unable to take his seizure medication.  There was, however, little testimony offered during the suppression hearing which supported that claim.  The only mention of the defendant's well-being occurred during Lt. Swauncy's cross-examination, when he acknowledged that the defendant

informed him that he was tired and sleepy. Standing alone, that is not enough to classify the statement as involuntarily made.

II

Next, the defendant claims that the trial court abused its discretion by allowing certain photographs of the victim to be introduced into evidence. Specifically, he argues that four photographs, which depict the deceased victim and the interior of his car at various angles, should not have been admitted because any probative value they possessed was substantially outweighed by the danger of unfair prejudice. We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 403 of the Tennessee Rules of Evidence, however, provides that relevant evidence may be excluded in certain situations:

> Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Simply because a photograph is prejudicial does not mean that it must be excluded as a matter of law. See State v. Gentry, 881 S.W.2d 1, 6 (Tenn. Crim. App. 1993). Courts must still determine the relevance of the photograph and weigh its probative value against any undue prejudice.

In State v. Banks, 564 S.W.2d 947, 951 (Tenn. 1978), our supreme court recognized "the inherently prejudicial character of the photographic depictions of a murder victim. . . ." In adopting Federal Rule of Evidence 403 as its test for admissibility, the court suggested a variety of factors for consideration by the trial judge. The "value of photographs as evidence, . . . their accuracy and clarity . . . [and] the inadequacy of the testimonial evidence in relating the facts to the jury" are appropriate factors. Id. The admissibility of relevant photographs of the victim is within the sound discretion of the trial judge and his or her ruling will not be disturbed on appeal absent a clear showing of an abuse of that discretion. Id. at 949.

The trial judge found nothing prejudicial in two of the photographs, a closeup of the victim's foot and the vehicle's floor panel and a closeup of shattered glass on the driver's side seat, because there was little or no blood in the pictures. The defendant argued that the photographs were not probative and should not be admitted into evidence. The state argued that the pictures should be admitted into evidence, because they contradicted a statement made by the defendant. The defendant had claimed that he saw the victim draw a weapon "or something" before he fired. Photos demonstrated that there were no weapons inside the car. In our view, these two photographs were

relevant to rebut the claim of self-defense. Because only a part of the victim's leg is visible in the photographs, the probative value outweighs any undue prejudicial effect.

The trial judge also found that the probative value of the other two photographs, which depict the victim's body from separate angles, outweighed any prejudicial effect they might have on the jury. The defendant argued that there was nothing of probative value in the two photos. The state submitted that each photo gave the jury a better understanding of what occurred on the night in question.

The photographs show extensive detail of the interior of the car. Their content helps clarify certain particulars of the crime – like the fact that the defendant was shot through the glass of the driver's side window – and they support other witnesses' testimony on the type of gunshot wound the victim received. While the two photographs may be prejudicial to the defendant, it is our view that they were not unduly prejudicial. In the photograph taken from the driver's door, the body of the victim is shown slumped over to the passenger's side seat. All that can be seen is the lower torso of the victim and a small amount of blood. In the other photograph, which is taken from the passenger's door, the victim's head and upper torso appear. Even from this angle, however, there is a small degree of blood. While this photograph may have a more prejudicial effect than the other, it also shows the greatest amount of detail of the interior of the car. In our view, the photographs were properly admitted into evidence. Their probative value outweighed any prejudicial effect.

### III

The defendant also argues that the evidence produced at trial was insufficient to sustain a conviction for second-degree murder. He claims that the state's proof was neither sufficient nor sufficiently reliable to corroborate his confession. We disagree.

A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the state and resolves all conflicts in favor of the state's theory. State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). On appeal, "the state is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This court does not reweigh or reevaluate the evidence. Id. The jury's verdict, therefore, will only be disturbed if, after a consideration of the evidence in the light most favorable to the state, a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307 (1979); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983).

In our view, the defendant's confession that he shot the victim established all of the elements of the offense. A defendant, however, cannot be convicted solely upon the evidence of his inculpatory statement. See Ashby v. State, 124 Tenn 684, 139 S.W. 872, 875 (1911). Under our law, the "corpus delicti [of the crime] cannot be established by a confession alone." Taylor v. State, 479 S.W.2d 659, 662 (Tenn. Crim. App. 1982). A confession may sustain a conviction when "there is other evidence to show the commission of the crime by someone." State v. Stapleton, 638 S.W.2d 850, 854 (Tenn. Crim. App. 1982). The slightest corroborating evidence of the confession is

sufficient, however. See State v. Ervin, 731 S.W.2d 70, 72 (Tenn. Crim. App. 1986). Furthermore, while a confession may be corroborated by independent proof, the corroborating evidence need not connect the defendant with the crime. Buckingham v. State, 540 S.W.2d 660, 663 (Tenn. Crim. App. 1976). Similarly, the corroborating evidence necessary to support the corpus delicti need not be sufficient, in and of itself to support the conviction, but need only provide "the essential facts . . . to justify a jury inference of their truth." Opper v. United States, 348 U.S. 84 (1954).

Here, the defendant told police that he and his friends were in a gray four-door car and that the victim was in a red two-door car along with a woman. He acknowledged that he and his friends blocked the victim's car and that he shot the victim. There is direct evidence to support the defendant's confession in the statement by Merritt. In that statement, Merritt corroborates the defendant's confession by acknowledging that he, the defendant, and two other men were driving around in a gray four-door car when they flagged down the victim and Ms. Corum. Merritt stated that they blocked the path of the victim's car and that the defendant shot the victim in the head. Ms. Corum's testimony also corroborates the defendant's confession. Ms. Corum testified that she and the victim were in the Percy/Delta area to purchase drugs when they were flagged down by several men in a gray four-door car. She testified that they were blocked from leaving and a man wearing a red and white jacket left the backseat of the car and shot the victim. In our view, this corroboration of the confession is sufficient to sustain a conviction for second-degree murder.

The defendant also contends that the testimony of Ms. Corum was inconsistent with the testimony of Merritt and that, in consequence, the required corroborating testimony was unreliable. Ms. Corum testified that she saw "a guy" leave the back of a gray four-door car on the night of November 3rd and walk to the driver's side door of the victim's red Hyundai Excel. She stated that he raised a gun to the window and fired. While Ms. Corum acknowledged that she could not see the face of the shooter, she could remember that he wore a red and white jacket. In his statement to police, Merritt stated that the defendant was riding in the backseat of his car when they flagged down the victim and Ms. Corum. He recalled that two men left his car after they had blocked the victim's vehicle, but testified that it was the defendant who shot the victim. It is unclear whether there are any inconsistencies in the two statements because Ms. Corum was never asked if anyone other than the defendant left the gray vehicle on the night of November 3rd. Ms. Corum stated that a man from the backseat left the car, walked over to the victim, and shot him – this does not necessarily mean that Ms. Corum did not observe a second man leave the car. In any event, the corroborative evidence need not be sufficient in and of itself to support the conviction and need only justify a jury inference of the truth of the corpus delicti. The testimony of Ms. Corum and Merritt is more than enough evidence to corroborate the defendant's confession that he committed the murder.

IV

Next, the defendant claims that the trial court abused its discretion by not instructing the jury on the lesser included offenses of voluntary manslaughter and criminally negligent homicide. The trial judge, of course, has a duty to give a complete charge of the law applicable to the facts of the case. State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986). There is an obligation "to charge the

jury as to all of the law of each offense included in the indictment, without any request on the part of the defendant to do so." Tenn. Code Ann. § 40-18-110(a). Pursuant to our statute and case law interpretations, defendants are entitled to jury instructions on all lesser offenses for which the evidence would support conviction. Complete instructions allow the jury to determine among each alternative the appropriate offense, if any, for conviction and more evenly balance the rights of the defendant and the state. It is only when the record is devoid of evidence to support an inference of guilt of the lesser offense that the trial court is relieved of the responsibility to charge the lesser crime. Stephenson, 878 S.W.2d at 549-50; State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990).

In State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998), our supreme court rejected a line of cases which had concluded that the right to instructions on lesser offenses was founded in the Tennessee Constitution and instead ruled that entitlement was based solely upon the statutory requirement.[1] In consequence, the high court directed that any error in the omission of a lesser included offense would be subject to the following harmless error analysis:

> Reversal is required if the error affirmatively appears to have affected the result of the trial on the merits, or in other words, reversal is required if the error more probably than not affected the judgment to the defendant's prejudice.

Id. at 105.

---

[1] See State v. Staggs, 554 S.W.2d 620 (Tenn. 1977); Strader v. State, 362 S.W.2d 224 (Tenn. 1962). Recent cases stating rule that failure to charge lesser offense is a constitutional deprivation rely on State v. Wright, 618 S.W.2d 310 (Tenn. Crim. App. 1981)(Joe D. Duncan, Judge, author), and include the following: State v. Belser, 945 S.W.2d 776 (Tenn. Crim. App. 1996); State v. Howard, 926 S.W.2d 579 (Tenn. Crim. App. 1996); State v. Summerall, 926 S.W.2d 272 (Tenn. Crim. App. 1995); State v. Ruane, 912 S.W.2d 766 (Tenn. Crim. App. 1995); State v. Lewis, 919 S.W.2d 62 (Tenn. Crim. App. 1995); State v. Boyce, 920 S.W.2d 224 (Tenn. Crim. App. 1995); State v. King, 905 S.W.2d 207 (Tenn. Crim. App. 1995); State v. McKnight, 900 S.W.2d 36 (Tenn. Crim. App. 1994); State v. Vance, 888 S.W.2d 776 (Tenn. Crim. App. 1994); State v. Banes, 874 S.W.2d 73 (Tenn. Crim. App. 1993); State v. Richard Darrell Miller and Johnny Wayne Garner, C.C.A No. 01C01-9703-CC-00087 (Tenn. Crim. App., at Nashville, Sept. 11, 1998); State v. George Rose, C.C.A.. No. 02C01-9710-CR-00405 (Tenn. Crim. App., at Jackson, July 2, 1998); State v. Harvey Phillip Hester, C.C.A. No. 03C01-9704-CR-00144 (Tenn. Crim. App., at Knoxville, June 4, 1998); State v. Becky Davis, C.C.A. No. 03C01-9701-CR-00027 (Tenn. Crim. App., at Knoxville, May 1, 1998); State v. Willie D. Graham, C.C.A. No. 03C01-9707-CC-00314 (Tenn. Crim. App., at Knoxville, May 7, 1998); State v. Warren Tyrone Fowler, C.C.A. No. 03C01-9709-CC-00391 (Tenn. Crim. App., at Knoxville, Apr. 29, 1998); State v. Harvey D'Hati Moore, C.C.A. No. 03C01-9704-CR-00131 (Tenn. Crim. App., at Knoxville, Mar. 18, 1998); State v. Daniel Joe Brown, C.C.A. No. 02C01-9611-CC-00385 (Tenn. Crim. App., at Jackson, Dec. 3, 1997); State v. Michael Tyrone Gordon, C.C.A. No. 01C01-9606-CR-00213 (Tenn. Crim. App., at Nashville, Sept. 18, 1997); State v. George Brooks, C.C.A. No. 02C01-9602-CR-00050 (Tenn. Crim. App., at Jackson, May 15, 1997); State v. Janice Hansbrough-Eason, C.C.A. No. 02C01-9504-CR-00098 (Tenn. Crim. App., at Jackson, Dec. 19, 1996); State v. Hollis Ray Williams, C.C.A. No. 03C01-9406-CR-00209 (Tenn. Crim. App., at Knoxville, July 23, 1996); State v. Randall Scott, C.C.A. No. 01C01-9307-CR-00240 (Tenn. Crim. App., at Nashville, Jan. 5, 1996); State v. Deborah Gladish, C.C.A. No. 02C01-9404-CC-00070 (Tenn. Crim. App., at Jackson, Nov. 21, 1995); State v. Eric J. Fair, C.C.A. No. 02C01-9403-CR-00055 (Tenn. Crim. App., at Jackson, Nov. 15, 1995).

In State v. Tina Swindle, No. M1998-00362-SC-R11-CD (Tenn. Aug. 25, 2000) (not for publication), our supreme court reaffirmed its decision in Williams, concluding that the trial court's failure to instruct misdemeanor assault as a lesser included offense of the primary charge, aggravated sexual battery, was harmless error under Tenn. R. Crim. P. 52(a). In State v. Bolden, 979 S.W.2d 587 (Tenn. 1998), however, the defendant, who was charged with premeditated first degree murder, was willing to gamble on an "all or nothing" verdict by asking the trial judge not to charge the lesser included offense of second degree murder; the trial judge refused and the defendant was convicted on that lesser crime. While our supreme court affirmed the second degree murder conviction, its opinion emphasized the mandate of the statute requiring trial courts to "instruct the jury on all lesser offenses if the evidence introduced at trial is legally sufficient to support a conviction of the lesser offense." Id. at 593. In Bolden, our supreme court acknowledged that a "purpose of the statute is to protect the right to trial by jury by instructing the jury on the elements of all offenses embraced by the indictment [and to] facilitate[] the overall truth-seeking function of the process." Id. If the failure to charge a lesser included offense is an error of constitutional dimension, as Bolden would imply, the proper question is whether the error is harmless beyond a reasonable doubt.

"Voluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. § 39-13-211(a). Criminally negligent homicide is any criminally negligent conduct which results in death. Tenn. Code Ann. § 39-13-212. Voluntary manslaughter and criminally negligent homicide are lesser included offenses of second-degree murder. See State v. Michael Eisom, No. W1999-00739-CCA-R3-CD (Tenn. Crim. App., at Jackson, Oct. 11, 2000); State v. John Philip Noland, No. E2000-00323-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Aug. 3, 2000).

The guiding principle is that if there is evidence in the record from which the jury could have concluded that a lesser included offense was committed, there must be an instruction for the lesser offense. See Johnson v. State, 531 S.W.2d 558, 559 (Tenn. 1975). In State v. Burns, our supreme court adopted a two-step process in determining whether the evidence justifies a jury instruction on a lesser included offense:

> First, the trial court must determine whether any evidence exists that reasonable minds could accept as to the lesser included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgements on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

6 S.W.3d at 469.

Here, the trial court held that there was no proof presented at trial to justify a charge of criminally negligent homicide and, in consequence, the defendant was unable to meet the first prong of the <u>Burns</u> test. We agree. At trial, the defendant testified that he did not shoot the victim. Merritt, a state witness, testified that he did not see the defendant shoot anyone. Ms. Corum, the only other eyewitness, testified to facts which support the "knowing" killing of another, not to criminally negligent conduct which results in death. Thus, the record is devoid of any evidence which might justify a charge of criminally negligent homicide and the trial court properly omitted an instruction on that lesser included offense.

The trial court did not address whether the proof justified a charge of voluntary manslaughter. Although a close issue, it is our conclusion that the evidence meets both the first and the second prongs of the <u>Burns</u> test. In his statement to police, the defendant admitted shooting the victim because he "ran off" with some of Merritt's money and because he "drew for somethin[g]." Viewing this in the light most favorable to the defendant and without making judgments on credibility, it is our assessment that reasonable minds could accept this statement as evidence of the lesser included offense of voluntary manslaughter. Voluntary manslaughter requires that the defendant's "passions" be produced by "adequate provocation" which would lead a "reasonable person" to act in an irrational manner. <u>See</u> Tenn. Code Ann. § 39-13-211(a). Here, the crime took place at night in an inner-city location. The victim was attempting to purchase illegal drugs. The victim and his companion had used up their crack cocaine earlier in the day and were looking for more. The defendant initially told police that he shot the victim because he believed that the victim, who apparently did not live in the area and was there only to purchase cocaine, was reaching for "something," implying it might have been a weapon. Viewed liberally, as required by law, it is our conclusion that there was at least some evidence of voluntary manslaughter. It is also our view that the second <u>Burns</u> requirement has been met. Had the defendant been convicted of voluntary manslaughter, it is our collective belief that the evidence would have been legally sufficient to support a conviction for the lesser-included offense. The defendant admitted to police that he killed the victim after learning that the victim had stolen a friend's money and perceiving that the victim appeared to be reaching for a weapon in a threatening manner. Even though the defendant challenged the admissibility of his pre-trial statement and testified that he did not shoot the victim, the statement was submitted to the jury as an important part of the state's proof-in-chief. While the alternative defense of adequate provocation to warrant only a manslaughter conviction is inconsistent with the defense theory at trial, it is the duty of the jury to ascertain the facts and determine the credibility of the witnesses. Trial courts should not remove from the domain of the jury the fact-finding responsibility.

By use of the <u>Williams</u> standard, it is our view that the trial court's failure to charge voluntary manslaughter did not affect the verdict to the prejudice of the defendant. Moreover, by the use of the <u>Bolden</u> standard, it is our view that the error was harmless beyond a reasonable doubt. The defendant's statement itself is inconsistent; he gave two different reasons, not necessarily related, for shooting the victim. Credibility was already an issue before the defendant chose a different theory at trial. The eyewitness testimony of Ms. Corum was particularly compelling. Ms. Corum testified that the defendant walked to the driver's side window and ordered her and the victim to step out of

the car.  She maintained that as the defendant drew his gun, the victim put the car in reverse, raised his hands in the air, and was shot.  In his statement to police, Merritt stated that the defendant was armed with a gun and was walking towards the victim's car before there was any indication of "provocation sufficient to lead a reasonable person to act in an irrational manner."  Furthermore, the testimony of Ms. Corum and the physical evidence at the scene indicate that the victim had placed his car in reverse and was moving away from the defendant in order to avoid a possible confrontation when he was shot.  At trial, the defendant, of course, claimed that he did not shoot the victim, an incredible assertion in view of the overwhelming evidence to the contrary.  That tended to lessen the credibility of his pretrial statement that he either acted in self-defense or acted in an irrational manner due to the provocation claimed.  In our view, any error was not only harmless when measured by the standard adopted in Williams, but also harmless beyond a reasonable doubt.

V

Finally, the defendant claims that his sentence was excessive. He argues that there were at least two mitigating factors that the trial court failed to apply.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct.  Tenn. Code Ann. § 40-35-401(d).  This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances."  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment.  Tenn. Code Ann. § § 40-35-102, -103, & -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors.  Tenn. Code Ann. § 40-35-210(c).  If there are enhancement factors but no mitigating factors, the trial court shall set the sentence at or above the midpoint.  Tenn. Code Ann. § 40-35-210(d).  If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the midpoint.  Id.  A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence.  Tenn. Code Ann. § 40-35-210(e).  The sentence must then be reduced within the range by any weight assigned to the mitigating factors present.  Id.

The sentencing range for second-degree murder, a Class A felony, is from 15 to 25 years.  See Tenn. Code Ann §40-35-112.   The presumptive sentence begins at 20 years.  The trial court found three enhancement factors:  (a) employing a firearm during the commission of the offense, Tenn. Code Ann. § 40-35-114(9); (b) a previous history of unwillingness to comply with the

-11-

conditions of a sentence involving release in the community, Tenn. Code Ann. § 40-35-114(8); and (c) commission of the crime under circumstances in which the potential for bodily injury to the victim was great, Tenn. Code Ann. § 40-35-114(16). In addition, the trial court emphasized the fact that the defendant used a firearm while selling drugs. The court sentenced the defendant to 24 years in the Tennessee Department of Correction to be served at the rate of 100 percent, because the defendant was found to be a violent offender. The defendant does not object to any of the enhancement factors used by the court, but contends that the trial court failed to weigh certain mitigating factors in determining his sentence, including: (a) that he acted under strong provocation, Tenn. Code Ann. § 40-35-113(2); and (b) that substantial grounds existed to justify the criminal conduct, though failing to establish a defense, Tenn. Code Ann. § 40-35-113(3).

Neither of the mitigating factors alleged by the defendant are applicable. Here, the defendant again relies on his pretrial statement in which he told police that he killed the victim because he thought the victim was drawing a weapon and/or because the victim had "run off" with some of Merritt's money. Evidence produced at trial, however, established that the defendant and his friends flagged down the victim's car, and when the victim tried to leave, they blocked his exit. The defendant approached the victim and ordered him to get out of the car. When they tried to get away, the defendant killed the victim.

The trial court is not required to place any particular weight on the mitigating and enhancement factors. State v. Moss, 727 S.W.2d 229, 240 (Tenn. 1986). Some discretion is due. The sentence carries the presumption of correctness. Because of the numerous enhancement factors and lack of mitigating factors and each of the mitigating factors, we approve of the sentence imposed by the trial court.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE

-12-