IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 5, 2008 Session

**STATE OF TENNESSEE v. AARON DUCHESNE**

**Direct Appeal from the Circuit Court for Madison County**
**No. 06-504     Donald Allen, Judge**

---

**No. W2007-01535-CCA-R3-CD  -  Filed May 12, 2009**

---

Following a jury trial, Defendant, Aaron Duchesne, was found guilty of theft of property valued between $10,000 and $60,000, a Class C felony. At the conclusion of Defendant's sentencing hearing, the trial court sentenced Defendant as a Range II, multiple offender, to ten years, and ordered Defendant to serve his sentence consecutively to any sentences that might be imposed in case numbers 06-05119 and 06-04963 which were pending in Shelby County at the time of the sentencing hearing. On appeal, Defendant argues that (1) the evidence was insufficient to support his conviction; (2) the trial court failed to perform its function as thirteenth juror; and (3) the trial court erred in its sentencing determinations concerning the length of his sentence and in imposing consecutive sentencing. After a thorough review, we affirm Defendant's theft conviction and the length of his sentence. We reverse the trial court's imposition of consecutive sentencing and remand for entry of a judgment consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed in Part;**
**Reversed in Part; and Remanded**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Charles Edgar Waldman, Memphis, Tennessee, for the appellant, Aaron Duchesne.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Background**

Sam Rick Neely, the general manager of Carlock Nissan in Jackson, testified that a red 2003 Ford Explorer, VIN 1FMDU74K53ZA71457, was purchased by the company on May 29, 2006, as

a trade-in vehicle in connection with the sale of a 2006 Nissan Pathfinder. Mr. Neely said that the Explorer was valued at $12,500. Mr. Neely stated that he noticed that the Explorer was missing from the car lot on July 7, 2006. After he confirmed that the Explorer had not been sent to another location for repairs or loaned to a customer, Mr. Neely reported the vehicle as stolen.

Mr. Neely said that the Explorer was located in Vicksburg, Mississippi, on July 8 or July 9, 2006, and returned to Tennessee by a wrecker service. Mr. Neely stated that the vehicle's windows and sunroof were broken, the ignition was stripped, the DVD player was missing, the original tires had been removed and a different set of tires placed on the vehicle, and the engine would not start. Mr. Neely said that Carlock Nissan's insurance company considered the vehicle a total loss and paid the company the full value of the Explorer. Mr. Neely identified the Explorer from photographs taken after its recovery in Mississippi. Mr. Neely said that he did not know Defendant and did not give Defendant permission to remove the Explorer from the car lot.

On cross-examination, Mr. Neely agreed that the Explorer model was started with a magnetic key which would not work if the ignition was damaged. Mr. Neely stated that at the time of the offense, approximately 250 new and used vehicles were on the car lot, and the car lot was not equipped with video surveillance equipment. Mr. Neely stated that he questioned several employees about the Explorer, and no one could provide any information about the whereabouts of the vehicle or who had taken it. Mr. Neely said that the Explorer was parked behind the car lot's building where vehicles were stored before they were ready for sale. Mr. Neely observed the Explorer on the car lot in early June and stated that the Explorer was not in the condition it was when retrieved from Mississippi. Mr. Neely acknowledged that the back parking lot also contained customer and employee vehicles.

Mr. Neely acknowledged that trade-in vehicles were occasionally loaned to customers while the customer's vehicle was being repaired. Mr. Neely stated, however, that the keys to the trade-in vehicles were kept in the office of the used car manager, Bill Blakemore. Mr. Neely said that when Mr. Blakemore informed him that the Explorer was missing, Mr. Blakemore had both sets of keys to the Explorer. Mr. Neely acknowledged that he did not question all of the company's employees about the missing Explorer.

Debbie Stanfill, an investigator in the Jackson Police Department's auto theft unit, testified that the police department received notification on July 10, 2006, that the Explorer had been located in Mississippi by the Warren County, Mississippi Sheriff's Department. Investigator Stanfill was informed that the sheriff's department had taken Defendant and his companion, Melanie Fuller, into custody in connection with the recovery of the Explorer, and that Ms. Fuller had given a statement to the investigating officers.

Deputy Sheriff Chris Satcher, with the Warren County Sheriff's Department, testified that he observed a red 2003 Ford Explorer parked on the side of the road at approximately 8:30 p.m. on July 9, 2006. Deputy Sheriff Satcher noticed that the vehicle's back driver's side window was broken and the vehicle did not have a license plate. He stopped to investigate and recorded the

Explorer's VIN as 1FMDU74K53ZA71457. Deputy Sheriff Satcher ran the VIN through the sheriff department's dispatch and learned that the Explorer had been reported as stolen in Tennessee. Deputy Sheriff Stacher stated that approximately two hours later, he and Investigator Jeff Crevitt initiated a traffic stop of a truck in which Defendant was a passenger about two miles from the location of the Explorer. Defendant was arrested for the theft of the vehicle and transported to the Warren County Jail.

On cross-examination, Deputy Sheriff Satcher said that he was "sure" that no DNA samples were taken from the Explorer. Deputy Sheriff Satcher stated that the Explorer was found approximately one-fourth of a mile from Ricky Brown's house. Deputy Sheriff Satcher transported Defendant to the jail in his patrol car, but he could not recollect if he had activated the camera inside the vehicle.

Investigator Crevitt identified Defendant at trial as the passenger of the white commercial truck he stopped on July 9, 2006. Investigator Crevitt testified that Defendant was developed as a suspect in the theft of the Explorer while the officers were gathering evidence from the vehicle. After receiving information from another officer, Inspector Crevitt drove to Ricky Brown's residence which was located approximately 150 yards from the Explorer. Inspector Crevitt and other officers searched for Defendant in the woods around Mr. Brown's residence without success. When Inspector Crevitt returned to Mr. Brown's residence, Melanie Fuller was sitting on the front steps. Ms. Fuller was advised of her Miranda rights. She told Inspector Crevitt that she had accompanied Defendant when Defendant drove the Explorer from Tennessee to Mr. Brown's residence.

Ms. Fuller was taken into custody, and Inspector Crevitt returned to the Explorer to take photographs. Inspector Crevitt said that he received a telephone call from Mr. Brown asking him to return to Mr. Brown's residence. When he arrived, Inspector Crevitt observed a white commercial truck leaving Mr. Brown's driveway at a high rate of speed. Inspector Crevitt pursued the truck for approximately three miles when the truck pulled to a stop. Inspector Crevitt approached the vehicle on the passenger side and stated that Defendant was leaning down into the passenger seat. Inspector Crevitt read Defendant his Miranda rights and placed him in custody. Inspector Crevitt told Defendant that he would be charged with theft of the Explorer and that Ms. Fuller had already disclosed information about the vehicle. Defendant told Investigator Crevitt that Ms. Fuller was not involved and that he had stolen the Explorer. Investigator Crevitt asked Defendant about the missing DVD player and the tires. At that point, Defendant told Investigator Crevitt that he wanted to speak with a lawyer, and Inspector Crevitt stopped questioning Defendant.

On cross-examination, Investigator Crevitt stated that the ignition of the Explorer did not appear damaged, and he agreed that a key would be needed to start the vehicle. Investigator Crevitt said that he had obtained some partial fingerprints from the Explorer, but he did not submit them for identification because Defendant had admitted that he had been in the vehicle. Investigator Crevitt stated that he went to Mr. Brown's house because he received a telephone call from Investigator Trexler that Mr. Brown told him that Defendant had been driving the Explorer. Investigator Crevitt stated that he did not see Ricky Brown's brother, Victor, at the house that night. Investigator Crevitt

-3-

acknowledged that he had previously arrested Victor Brown for burglary. Investigator Crevitt said that Ricky Brown told him that Defendant had arrived at his house approximately two weeks earlier driving the red Explorer.

Investigator Crevitt said that he did not take Defendant to identify the Explorer because the Explorer had already been towed by the time Defendant was located and arrested. However, Ms. Fuller's purse was found on the ground beside the Explorer, and Investigator Crevitt told Defendant he was talking about the red Explorer parked at the intersection of Grange Isle and Fish Ferry Road, to which Defendant made no reply.

## II. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction. Defendant contends that there was no direct evidence connecting Defendant with the theft of the Ford Explorer beyond his uncorroborated statement to Officer Crevitt that he "took the truck." Defendant also submits that the evidence was insufficient to support a finding that the Ford Explorer was, in fact, stolen, and there was no explanation of how the Explorer was driven off the carlot. Defendant points out that Mr. Neely testified that the Explorer's two keys were still in the possession of the carlot and that the Explorer could not be started if the ignition was damaged. Investigator Crevitt testified that the Explorer's ignition did not appear damaged when the vehicle was found in Mississippi.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn.1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. If the value of the property obtained is not less than $10,000 but not more than $60,000, the offense is a Class C felony. Id. § 39-14-105(4). "Value" is defined as "[t]he fair market value of the property . . . at the time and place of the offense," or "[i]f the fair market

value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." Id. § 39-11-106(36)(A).

"[A] conviction cannot be founded solely upon a defendant's confession, and our cases have long required some corroborating evidence in order to establish the corpus delicti." State v. Smith, 24 S.W.3d 274, 281 (Tenn. 2000) (citing Ashby v. State, 124 Tenn. 684, 697-98, 139 S.W. 872, 875 (1911)). The term "corpus delicti" refers to the "body of the crime," and "requires a showing that a certain result has been produced and the result was created through a criminal agency." State v. Jones, 15 S.W.3d 880, 890-891 (Tenn. Crim. App. 1999). Only slight evidence, direct or circumstantial, however, is needed to corroborate a defendant's confession, and the corroborating evidence need not connect the defendant with the crime. Smith, 24 S.W.3d at 282; Buckingham v. State, 540 S.W.2d 660, 663 (Tenn. Crim. App. 1976). "[A]s long as this very modest corroboration requirement is satisfied, the ultimate truth or falsity of the defendant's confession is a determination left to the jury." State v. Housler, 193 S.W.3d 476, 491 (Tenn. 2006).

Mr. Neely testified that a red Ford Explorer, VIN 1FMDU74K53ZA71457, valued at $12,500, was taken from the Nissan carlot without permission. Mr. Neely stated that he first noticed that the Explorer was missing from the car lot on July 7, 2006. The Explorer was found in Mississippi on July 9, 2006, and identified by its VIN. On cross-examination, Investigator Crevitt said that Ricky Brown told him that Defendant had arrived at his house in a red Explorer approximately two weeks earlier, and that Defendant was trying to put tires on the vehicle. Melanie Fuller, Defendant's girlfriend, was read her Miranda rights and taken into custody at Mr. Brown's house. Investigator Crevitt testified, without objection, that Ms. Fuller told him that she had accompanied Defendant as he drove the red Explorer from Tennessee to Mississippi. Investigator Crevitt stated that Ms. Fuller's purse was found on the ground next to the Explorer. Investigator Crevitt read Defendant his Miranda rights, and Defendant stated he understood them. Defendant then told Investigator Crevitt that Ms. Fuller was not involved and that he had stolen the Explorer.

As Defendant points out, there was inconsistent testimony from Mr. Neely and Investigator Crevitt as to whether the Explorer's ignition had been damaged when it was recovered in Mississippi and returned to the carlot. However, it is the jury's prerogative to resolve inconsistencies in the proof in favor of the State. See Bland, 958 S.W.2d at 659.

Based on our review of the record, we conclude that Defendant's admission that he stole the Explorer was sufficiently corroborated, and that a rational trier of fact could find beyond a reasonable doubt that Defendant committed the offense of theft of property valued between $10,000 and $60,000. Defendant is not entitled to relief on this issue.

## III. Thirteenth Juror

Defendant argues that the trial court failed to act as a thirteenth juror. Defendant submits that the trial court had the benefit of learning from the sentencing hearing that Defendant had a history

of mental illness and a ninth grade education. Defendant contends that based on these factors as well as the insufficient evidence presented at trial, the trial court should have overturned the jury verdict.

Tennessee Rule of Criminal Procedure 33(f) provides that "[t]he trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence." An appellate court may grant a new trial only where the trial court has failed to act as the thirteenth juror, as it is the only practical remedy. State v. Moats, 906 S.W.2d 431, 435 (Tenn.1995). The accuracy of the trial court's determination as a "thirteenth juror" is not subject to appellate review. Id.

At the hearing on Defendant's motion for new trial, and after Defendant raised the thirteenth juror issue, the trial court reviewed the evidence and found in its opinion that the evidence "was more than sufficient to sustain the verdict of guilty." When a trial court overrules a motion for new trial, this Court may presume that the trial court has served as the thirteenth juror. Id. at 434. The trial court's statement that it had no disagreement with the jury's verdict is enough to demonstrate that it performed its duty as thirteenth juror. See State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995) (concluding that this Court may reverse the trial court's judgment only if the record contains statements by the trial court indicating disagreement or dissatisfaction with the jury's verdict). Defendant is not entitled to relief on this issue.

## IV. Length of Sentence

Defendant argues that the trial court failed to properly apply certain mitigating factors and failed to properly weigh enhancement and mitigating factors in sentencing Defendant, as a Range II multiple offender, to ten years for his Class C felony theft conviction.

At the sentencing hearing, the State relied on Defendant's presentence report which was introduced as an exhibit without objection. Defendant did not offer any evidence at the sentencing hearing. According to the presentence report, Defendant was twenty-six years old at the time of the commission of the offense. Defendant dropped out of high school after completion of the ninth grade but reported earning his G.E.D. while incarcerated at the Shelby County Penal Farm.

The presentence report reflects that Defendant was convicted of vandalism, a Class D felony, in 1999; and in 2001, leaving the scene of an accident involving death, a Class E felony, vehicular assault, a Class D felony, and vehicular homicide, a Class C felony. In addition, Defendant has several misdemeanor convictions including three misdemeanor drug possession convictions, one evading arrest conviction, one domestic assault conviction, and one simple assault conviction, as well as several traffic violations. Defendant was sentenced September 10, 2002, to four years for his vehicular homicide conviction, after which he was convicted of misdemeanor evading arrest, possession of a Schedule II drug, and several offenses of driving with a suspended license.

Defendant stated in the presentence report that he suffers from bipolar disease and is currently taking Trizodone. Defendant said that he stopped drinking alcohol six years ago, but he

-6-

admitted he has a problem with methamphetamine. Defendant expressed his willingness to participate in an in-patient drug treatment program or a boot camp program.

Defendant's mother, Genelle Harris, was interviewed during the preparation of the presence report. Ms. Harris stated that Defendant married very young and had a ten-year-old son. Although that marriage ended in divorce, Ms. Harris said that Defendant's fiancée, Melanie Fuller, was very supportive. Ms. Harris blamed Defendant's problems on drugs and indicated that she would like for him to participate in a rehabilitation program.

At the conclusion of the sentencing hearing, the trial court found that Defendant was a Range II, multiple offender, based on his 1999 felony vandalism conviction, and one of his 2005 felony convictions. See T.C.A. § 40-35-106(A)(1). As enhancement factors, the trial court found that Defendant had a history of criminal convictions in addition to those necessary to establish his sentencing range and that Defendant had on several occasions failed to comply with the conditions of a sentence involving release into the community. See id. § 40-35-114(1), (8). The trial court also noted as part of Defendant's criminal behavior that he was indicted in Shelby County on February 27, 2006, for two counts of theft of property over $10,0000, shortly before the current offenses were committed in Madison County in July 2006. See id. § 40-35-114(1).

The trial court considered Defendant's limited education as a mitigating factor but assigned this factor little weight, noting that it was Defendant's "choice not to . . . finish high school." See id. § 40-35-113(13). Moreover, we note that Defendant stated in his presence report that he had obtained a G.E.D. The trial court also extended slight weight to Defendant's mental health and the fact that his conduct neither caused nor threatened serious bodily injury. See id. § 40-35-113(1), (13). After considering the applicable enhancement factors, the trial court found that "based upon this criminal history . . . the maximum sentence is justified in this case." Accordingly, the trial court sentenced Defendant to ten years.

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. See T.C.A. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). This presumption of correction, however, "'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 Tenn. 1991)). "If, however, the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails," and our review is de novo. Carter, 254 S.W.3d at 345 (quoting State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004)).

A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). A trial court, however, "is no longer required to begin with a presumptive sentence subject to increase and decrease on the basis of enhancement and mitigating factors." Carter, 254 S.W.3d at 346. Therefore, an appellate court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

As a Range II, multiple offender, Defendant was subject to a sentence between six and ten years for his Class C felony conviction. T.C.A. § 40-35-112(b)(3). Defendant argues that the trial court erred in sentencing him to the maximum sentence in the range because the trial court acknowledged the presence of mitigating factors. Defendant's argument challenges the weight placed by the trial court on the articulated enhancement and mitigating factors. However, our supreme court has recently explained that:

> [p]rior to the 2005 amendments [to the 1989 Sentencing Act], a defendant could appeal on the basis that "[t]he enhancement and mitigating factors were not weighed properly, and the sentence is excessive under the sentencing considerations set out in § 40-35-103." [T.C.A.] § 40-35-401(b)(2) (2003). Similarly, the State could appeal on the basis that "[t]he enhancement and mitigating factors were not weighed properly." Id. § 40-35-402(b)(5). Significantly, the 2005 amendments deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors. See 2005 Tenn. Pub. Acts ch. 353, §§ 8, 9. Rather, a defendant may now appeal on the basis (among others) that the sentence "is excessive under the sentencing considerations set out in §§ 40-35-102 and 40-35-210," id. § 40-35-401(b)(2) (2006), and the State may now appeal on the added basis (among others) that the sentence "is inconsistent with the purposes or considerations of sentencing set out in §§ 40-35-102 and 40-35-103," id. § 40-35-402(b)(7).

Carter, 254 S.W.3d at 344.

Thus, the weight assigned to the applicable mitigating and enhancement factors has been left to the trial court's sound discretion. The Carter court further instructed that:

even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors.

Id. at 345-46.

Based on our review, we conclude that the sentence of ten years was imposed in a manner consistent with the purposes and principles set out in sections 40-35-102 and 40-35-103 of the Sentencing Act. We are, therefore, bound by the trial court's decision as to the length of the sentence. Defendant is not entitled to relief on this issue.

## IV. Consecutive Sentencing

Defendant argues, and the State concedes in its brief, that the trial court erred in ordering him to serve his theft sentence consecutively to any sentences which might ultimately be imposed in case nos. 06-05119 and 06-04963 in Shelby County which were pending at the time of Defendant's sentencing hearing.

Tennessee Code Annotated section 40-35-115(b) provides that it is within the trial court's discretion to impose consecutive sentencing if it finds by a preponderance of the evidence that any one of an enumerated number of criteria applies or, if not, "consecutive sentences are specifically required by statute or the Tennessee Rules of Criminal Procedure." In the instant case, the trial court did not find that any of the criteria listed in section 40-35-115(b) were applicable. Rule 32(c) of the Tennessee Rules of Criminal Procedure, however, provides that a sentence "shall be consecutive . . . to a sentence for a felony committed while the defendant was released on bail and the defendant is convicted of both offenses." Rule 32(c)(3)(C).

The "imposition of judgments, including sentences, for existing convictions shall occur in a progressive fashion with the successive sentences being determined to be served concurrently or consecutively to those previously imposed." State v. Arnold, 824 S.W.2d 176, 178 (Tenn. Crim. App. 1991) (citing T.C.A.§ 40-20-111(a)).

In Thompson v. State, 565 S.W.2d 889 (Tenn. Crim. App. 1977), the Coffee County Circuit Court ordered a sentence to be served consecutively with "any sentence which the defendant may receive in Moore County for criminal conduct prior to the date of this order." The Moore County charge apparently was pending at the time of the sentencing. In ordering the deletion of the reference to the Moore County charges, this Court stated,

[w]e conclude ... that under the terms of the statute a sentence may only be run consecutively to a previously imposed sentence. There is no statutory authority for the in futuro order entered in this case. It would be solely within the discretion of the

Moore County Court to determine whether a sentence resulting from a subsequent Moore County conviction should be served consecutively to or concurrently with the pre-existing Coffee County sentence now under review. Id. at 890; see also Arnold, 824 S.W.2d at 176 (concluding that the Coffee County Circuit Court could not require consecutive sentencing "in futuro" relative to judgments of conviction not yet entered in Lincoln County).

As the Arnold court explained:

[g]enerally, the last sentencing court should have the responsibility to determine whether or not a sentence should be served consecutively. See, e.g., State v. Stafford, 368 N.W.2d 364, 366 (Minn. App. 1985); Ex parte Ward, 161 Tex. Crim. 64, 274 S.W.2d 693 (1955). Otherwise, the first sentencing court's action would be preemptive of the last court's function and power to impose a sentence which is based upon all that has gone before. See, e.g., United States v. Eastman, 758 F.2d 1315 (9th Cir. 1985).

Id. at 178.

Based on the foregoing, we conclude that the trial court erred in ordering Defendant to serve his sentence for his theft conviction consecutive to any sentence which might later be imposed in case nos. 06-05119 and 06-0493 in Shelby County, and we remand the case for modification of the judgments by deleting any reference to the Shelby County cases.

## CONCLUSION

After a thorough review, we affirm the trial court's judgment relative to Defendant's conviction of theft of property valued between $10,000 and $60,000, and the length of Defendant's sentence. We reverse the trial court's order requiring the sentence to be served consecutively to his pending cases in Shelby County and remand the case for modification of the judgments by deleting any reference to the Shelby County cases.

_____
THOMAS T. WOODALL, JUDGE